[No. 2418-1.  Division One.  March 3, 1975.]

JIM CRENNA et al., *Respondents*, v. FORD MOTOR COMPANY, *Appellant*.

*Merrick, Hofstedt & Lindsey* and *H. Roland Hofstedt,* for appellant.

*Lycette, Diamond & Sylvester, Simon Wampold,* and *Thomas S. Wampold,* for respondents.

JAMES, J.—Plaintiffs Crenna brought this action against defendant Ford Motor Company for damages sustained when their Ford truck went out of control and struck a highway abutment. After the accident, it was ascertained that the truck's right rear axle was broken. The issue in the nonjury trial was whether the broken axle caused the accident or whether the axle was broken on impact after the driver had lost control.

The trial judge found that:

> The truck was being driven in a careful and prudent manner and at a reasonable rate of speed along interstate #5 within the City of Seattle, when suddenly and without warning the truck collapsed and gave way at the right rear of the truck, and went out of control and hit a guardrail and concrete abutment. What happened was that the right-rear axle of the vehicle broke and the right wheel and brake drum came off.

Finding of fact No. 3; and

> The axle broke before the impact and was not caused by the impact.
>
> The accident was caused by axle failure.
>
> What caused the vehicle to go out of control was a pre-existing crack which was initiated by manufacturing or parts defect. The wheel came off prior to the accident and that is what caused the accident.

Finding of fact No. 4.

■  Ford first contends that the trial judge erred in finding that a defective axle was the cause of the accident. A trial judge's findings of fact may not be disturbed on appeal if they are supported by substantial evidence. *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). The testimony of the driver, the state trooper who investigated the accident and the metallurgic expert called by the Crennas together with the exhibits constitute substantial evidence. Ford's assignments of error relating to the trial judge's findings and conclusions as to liability are not well taken.

Ford next contends that it was error to permit the state trooper to express his opinion as to the cause of the accident. Ford asserts that "[a]n analysis of [the trooper's] testimony indicates that his opinion is the rankest speculation and conjecture and is not substantial evidence that the wheel came off prior to the impact." Without citation of authority, Ford also argues that the trooper was improperly permitted to express an opinion as to "the ultimate fact in the case."

The trooper found the truck's point of impact with the highway abutment to be "eight to nine feet high" and stated that in his opinion, this indicated "no reduction of speed." The right rear wheel of the truck was found 300 feet down the road in the direction of travel before impact. It was the trooper's opinion, after reviewing all the circumstances and talking to the witness, "that the wheel had come off and caused the brakes to fail" prior to impact with the highway guardrail and post.

■■  Expert opinion concerning an ultimate fact is not inadmissible if the matter in question is not of common experience or knowledge. *Parris v. Johnson*, 3 Wn. App. 853, 479 P.2d 91 (1970). A trial judge is afforded wide discretion in determining whether expert opinion testimony should be considered. *Tokarz v. Ford Motor Co.*, 8 Wn. App. 645, 508 P.2d 1370 (1973). Such determination will be overruled on appeal only for an abuse of discretion. *Myers v.*

*Harter,* 76 Wn.2d 772, 459 P.2d 25 (1969). The trial judge did not err in admitting and considering the expert opinion testimony of the trooper.

Ford next contends that the trial judge erred in allowing the Crennas to present the opinion testimony of a metallurgic expert. The record discloses that on the day before trial was to begin, Crennas' counsel informed Ford's counsel that the truck axle was currently being examined by a metallurgist and that Ford would be supplied with a copy of his report and an opportunity to interrogate the metallurgist that afternoon. Ford's counsel declined the offer. Immediately following Crennas' opening statement, Ford's counsel stated that he was "going to object to any testimony from any expert they call now because of the extreme late notice." The trial judge then offered Ford a continuance which it rejected. The offer was later renewed and again declined. Ford's entire argument is that the expert's "testimony should have been stricken and without it there was insufficient evidence in the record to uphold a verdict against appellant." The assignment of error is frivolous.

Ford's principal contention on appeal is that the trial judge erred in denying it access to another expert witness who had been consulted by the Crennas. The record establishes that in answers to interrogatories approximately 9 months before trial, the Crennas named an expert who had examined the axle of the truck. At that time, however, the Crennas stated that it had not been determined "who or if anyone will be called as an expert witness at the trial." Five days before trial, Ford's counsel again informally sought to learn if the Crennas intended to call an expert and he was told that a decision had not yet been made. Ford's counsel then subpoenaed the expert whom the Crennas had first consulted. The Crennas responded with a motion in limine to quash the subpoena and to bar the testimony of the expert. The motion to quash was granted. After the Crennas had presented the testimony of their metallurgist, Ford again attempted to call, as a witness in

rebuttal, the expert first consulted by the Crennas. The trial judge again ruled that Ford could not call him.

The trial judge based his ruling upon CR 26(b)(4)(B) which provides as follows:

A party may discover facts known or opinions held by an expert who is *not* expected to be called as a witness at trial, *only* as provided in Rule 35(b)[1] or upon a *showing of exceptional circumstances* under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(Italics ours.)

After quoting the rule, the trial judge asked Ford's counsel if he was contending that Ford's "experts didn't have an opportunity to examine the alleged defective parts." Counsel replied:

No, of course not. We obtained the parts, and they were sent back to Dearborn and examined by our experts. But this, of course, was done after [Crennas' expert] had looked at them.

Ford's argument on appeal is twofold. It first points out that rule 26(b)(4)(B) applies only to "discovery" and that its intention was to call Crennas' expert as a witness *at trial.* Secondly, Ford argues that if the rule was applicable under the circumstances, the required showing of exceptional circumstances was made.

In granting Crennas' motion to quash the subpoena, the trial judge observed that although the rule concerned "discovery," he was persuaded that its purpose "would carry over into the trial."

We agree.

The basic philosophy of the rules permitting pretrial discovery is that a just result is more likely to be achieved at trial if every party to a civil action has access to all relevant information in the possession of any person unless the information is privileged. 8 C. Wright & A. Miller, *Federal Practice & Procedure* § 2001, at 15 (1970). But, philosophi-

---

[1]Rule 35(b) concerns the exchange of reports of examining physicians.

cally, "discovery" is inherently in conflict with the "adversary" process.

Under the federal rules as originally adopted, no exemption from discovery was provided for an attorney's "work product" or for the conclusions of an expert employed in preparation for trial. As a consequence, a flood of conflicting decisions, both state and federal, impelled the federal rules Advisory Committee in 1946 to propose that rule 26 be amended to, in effect, make "work products" (including the opinions of experts employed by counsel) privileged. The reasons most frequently advanced in advocating that expert opinion information should be immune from discovery were "work product," "attorney-client privilege" and "fundamental fairness." The United States Supreme Court did not adopt the Advisory Committee's proposal but when, in 1967, discovery rules were adopted in Washington, CR 26 substantially embraced the recommendation of the federal rules Advisory Committee.[2] As a consequence, except for examining physician's reports, the written conclusions of an adversary's expert were not discoverable in Washington.

In 1972, however, Washington followed the lead of the federal system and amended CR 26 to permit discovery of "the substance of the facts and opinions *to which the expert is expected to testify* . . ." (Italics ours.) CR 26(b)(4)(A)(i). The dramatic change brought about by the 1972 amendment is said to reflect a "marked change of thinking in recent years." 8 C. Wright & A. Miller, *Federal Practice & Procedure* § 2029, at 240 (1970).

But the "change of thinking" reflected in CR 26(b)(4)(A)(i) is tempered by CR 26(b)(4)(B), *supra,* and by CR 26(b)(4)(C), which grants the trial judge

---

[2]CR 26(b) provided, in part: "The court need not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor or agent in anticipation of litigation or in preparation for trial. The court shall not order the production or inspection of any writing that reflects an attorney's mental impressions, conclusions or legal theories, or, except as provided in Rule 35, the written conclusions of an expert." CR 26(b) was superseded effective July 1, 1972.

broad discretion to impose "protective orders." Because this is a matter of first impression in this jurisdiction, we think it helpful to quote from the federal committee's Note of 1970 to Amended Subdivision (b):

Under subdivision (b)(4)(B), a party may discover information only on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The new provision repudiates the few decisions that have held an expert's information privileged simply because of his status as an expert, *e.g.*, *American Oil Co. v. Pennsylvania Petroleum Products Co.*, 23 F.R.D. 680, 685-686 (D. R.I. 1959). See Louisell, *Modern California Discovery* 315-316 (1963). It also rejects as ill-considered the decisions which have sought to bring expert information within the work-product doctrine. See *United States v. McKay*, 372 F.2d 174, 176-177 (5th Cir. 1967). The provision adopts a form of the more recently developed doctrine of "unfairness." See *e.g.*, *United States v. 23.76 Acres of Land*, 32 F.R.D. 593, 597 (D. Md. 1963); Louisell, *supra* at 317-318; 4 *Moore's Federal Practice* ¶ 26.24 (2d ed. 1966). Ordinarily, a party can obtain the information he needs by consulting his own expert. If the circumstances are such that he cannot, discovery is permitted. Facts will more often be discoverable than opinions. *E.g.*, *Walsh v. Reynolds Metals Co.*, 15 F.R.D. 376 (D.N.J. 1954) (equipment examined by expert no longer in original condition—discovery allowed as to facts, not conclusion).

Subdivision (b)(4)(A) is concerned with experts retained or specially consulted in relation to trial preparation. Thus, it does not limit discovery of matters acquired by a person outside of trial preparation—*e.g.*, as a witness to an accident, even though the person is an expert. On the other hand, the subdivision precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed. As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed, but not those informally consulted.

Under subdivision (b)(4)(C), the court is directed, or authorized to issue protective orders, including an order

that the expert be paid a reasonable fee for time spent in responding to discovery, and that the party whose expert is made subject to discovery be paid a fair portion of the fees and expenses that the party incurred in obtaining information from the expert. The court may issue the latter order as a condition of discovery, or it may delay the order until after discovery is completed. These provisions for fees and expenses meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side has paid, often a substantial sum. *E.g.*, *Lewis* v. *United Air Lines Transp. Corp.*, 32 F. Supp. 21 (W.D. Pa. 1940); *Walsh* v. *Reynolds Metal Co.*, 15 F.R.D. 376 (D.N.J. 1954). On the other hand, a party may not obtain discovery simply by offering to pay fees and expenses. *Cf. Boynton* v. *R. J. Reynolds Tobacco Co.*, 36 F. Supp. 593 (D. Mass. 1941). Even in cases where the court is directed to issue a protective order, it may decline to do so if it finds that manifest injustice would result. Thus, the court can protect, when necessary and appropriate, the interests of an indigent party.

4 J. Moore, Federal Practice ¶ 26.01[18], at 26-51 (2d ed. 1974).

We read CR 26(b)(4)(B) as a recognition that a trial is still an adversary proceeding and that, so conceived, fundamental fairness requires that "discovery" not be utilized to defeat a litigant by probing for real or apparent weaknesses in his case which may have been revealed in his trial preparation.

CR 26(b)(4)(B) places the burden of showing "exceptional circumstances under which it is impracticable . . . to obtain facts or opinions . . . by other means" upon the party seeking discovery before a "consulting" expert may be interrogated. At trial, Ford argued that there were exceptional circumstances in that the expert whom the Crennas first consulted had

apparently looked at these parts some time before the Ford Motor Company got a look at them, and I now have information that he has looked at parts that we have never had access to, and he has seen parts which we never have, and we are entitled to find this out, because the only parts which the Ford Motor Company has been

supplied are the parts which are exhibited in Exhibit 21, and at this point in time we would like to call [Crennas' consulting expert] and find out what he, in fact, found.

In response to this argument, the Crennas' counsel, by affidavit, categorically stated that Ford's claim that it never had access to the parts was "wholly and totally inaccurate." The affidavit further stated that the truck and all its parts were "made available and shown to Ford immediately after the accident and months before [Crennas' consulting expert] was consulted."

In denying Ford's renewed motion at the close of trial, the trial judge pointed out that Crennas' counsel's affidavit was uncontroverted. Under these circumstances, the trial judge properly exercised his discretion in determining that Ford had not met the burden of establishing "exceptional circumstances" warranting discovery of the "facts known or opinions held" by Crennas' consulting expert.[3]

Affirmed.

WILLIAMS, C.J., and FARRIS, J., concur.

Petition for rehearing denied May 14, 1975.

Review denied by Supreme Court June 24, 1975.

---

[3]The rationale we have employed in this case is consistent with that used by our Supreme Court when confronted with a similar question prior to Washington's adoption of discovery rules. In *Sneddon v. Edwards*, 53 Wn.2d 820, 335 P.2d 587 (1959), it is held that the exclusion of an expert witness *solely* on the ground that the adversary had first consulted and paid him was error. But in *State v. Washington Horse Breeders Ass'n*, 64 Wn.2d 756, 394 P.2d 218 (1964), it is held that the trial judge properly exercised discretion in refusing to allow a party to call his adversary's expert where the party already possessed an "ample quantity of expert opinion" and it would have been impossible to conceal the facts concerning the employment of the expert from the jury. Although not expressly articulated, it is apparent that Washington anticipated the "recently developed doctrine of 'unfairness' " which prompted the federal committee to propose the adoption of Rule 26(b)(4)(B). Fundamental fairness is a proper concern in the exercise of judicial discretion when discovery of an adversary's work product is sought.