[No. 13419-9-III.     Division Three.     April 27, 1995.]

BEVERLY A. JOHNSON, ET AL, *Respondents*, v.
KIMBERLY K. McCAY, *Appellant.*

---

*Harold B. Field, Ronald L. Unger,* and *Murray, Dunham & Murray,* for appellant.

*Terry P. Abeyta* of *Abeyta-Nelson, P.C.,* for respondents.

SWEENEY, J. — Beverly Johnson was a passenger in a vehicle driven by Marcy Turner. Kimberly McCay rear-ended the vehicle as it slowed to make a right turn. Ms. McCay appeals the personal injury damage award to Ms. Johnson. She contends the court erred in (1) excluding the testimony of a surgeon who examined Ms. Johnson at the request of Ms. Turner's insurance company to determine Ms. Johnson's entitlement to personal injury protection benefits; (2) denying her motion to dismiss Ms. Johnson's future medical expenses

and future lost earnings claims; and (3) granting Ms. Johnson's motion for partial summary judgment on the issue of liability. We affirm.

## FACTS AND PROCEDURAL POSTURE

On December 21, 1990, at about 10 a.m., Ms. Johnson was a passenger in a vehicle driven by Ms. Turner. As Ms. Turner drove west on West Yakima Avenue, she signaled to make a right turn. In her rearview mirror, she noticed the vehicle behind her "coming up pretty quick". As she slowed to turn, she noticed that the driver, later identified as Ms. McCay, had one hand on the wheel and was leaning over fixing her hair. Ms. Turner yelled, "she's not slowing down". The Turner vehicle was struck, pushed through the intersection and off to the side of the road. Ms. Johnson suffered immediate pain in the right side of her neck and her head. She subsequently developed a severe headache and burning numbness in her arms and the top of her shoulders.

Following the accident, Ms. Johnson was examined by several physicians, including Leslie Bornfleth, a neurosurgeon; David Williams, her family physician; and Roy Kokenge, a neurologist. Following their examinations, a course of conservative treatment, including exercise and physical therapy, was recommended. Prior to the accident, Ms. Johnson worked as a cosmetologist. Since the accident, she has not returned to that line of work because of the pain in her neck and head.

The Turner vehicle was insured by Allstate Insurance Company. As a passenger, Ms. Johnson was entitled, by the terms of the Allstate policy, to certain insurance coverage, including personal injury protection (PIP). The policy also authorized Allstate to require applicants for PIP benefits to submit to a physical examination as a condition of receiving those benefits. Allstate elected to exercise that right and hired Thomas Grow, an orthopedic surgeon, to conduct an examination of Ms. Johnson.

Dr. Grow examined Ms. Johnson on October 10, 1991. His report documented complaints of headaches and pain in the base of her skull and the right side of her neck. Following the examination, he noted his impressions, which included

that her condition was due to the accident, it would take a number of months to resolve (he suspected), and she should be able to begin working her way back into her occupation, starting part time.

On December 9, 1992, Ms. Johnson was involved in a second accident. Dr. Williams concluded that the second accident had no significant effect on Ms. Johnson's ongoing problems.

On March 12, 1992, Ms. Johnson sued Ms. McCay for personal injuries suffered as a result of the accident. On November 9, 1992, Ms. Johnson moved for summary judgment on the issues of liability and proximate cause. The court granted the motion.

Prior to trial, Ms. Johnson moved in limine to exclude evidence of Dr. Grow's examination and impressions, pursuant to CR 26(b)(5)(B).[1] Ms. McCay objected. She argued that Dr. Grow's opinions were not acquired or developed in anticipation of litigation or for trial and, therefore, the protections afforded by CR 26(b)(5)(B) were inapplicable. The court granted Ms. Johnson's motion. This ruling precluded Ms. McCay from calling Dr. Grow as a witness or in any way referring to his examination during trial.

The trial started on June 8, 1993. Following the close of Ms. Johnson's case, Ms. McCay moved to dismiss the claims for future medical expenses, future lost earnings, and future impairment of earning capacity. The court denied the motion. By special verdict form, the jury found Ms. Johnson's damages to be:

| | |
|---|---|
| Past Economic Damages | $45,829 |
| Future Economic Damages | $94,832 |
| Past and Future Non-economic Damages | $21,000 |
| Loss of Consortium Damages to Timothy Johnson (husband) | $10,500 |

---

[1]"A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only as provided in rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

The special verdict form also asked the jury: "Was there a third driver who was negligent?" The jury responded, "No". Judgment on the verdict in the amount of $172,161 was entered. Ms. McCay appeals.

## DISCUSSION

Ms. McCay assigns error to the trial court's ruling excluding evidence of Dr. Grow's examination of Ms. McCay. The contentions of the parties frame a 3-step analysis. First, was the evidence "work product" under the provisions of CR 26(b)(5)(B) and therefore properly excluded. Second, even if the evidence was admissible under CR 26(b)(5)(B) was it properly excluded by ER 403 considerations, because its prejudicial impact outweighed its probative value. And, finally, if the evidence was improperly excluded was the error harmless in any event.

## CR 26(b)(5)(B)

Ms. McCay begins by arguing that Dr. Grow's anticipated testimony was relevant. ER 401.[2] She is correct. The testimony was "of consequence to the determination of the action . . .". ER 401.

She next contends that CR 26(b)(5)(B) is inapplicable because Dr. Grow was not Ms. Johnson's expert and was not consulted in anticipation of litigation. Ms. Johnson counters that a medical examiner who performs a PIP exam is a consulting expert. And because Ms. Johnson elected not to call Dr. Grow, Ms. McCay was only entitled to call him upon a showing of exceptional circumstances. CR 26(b)(5)(B).

A party may obtain discovery of any matter that is relevant to the subject matter involved and not privileged. CR 26(b)(1). *See also* Fed. R. Civ. P. 26(b)(1). The scope of discovery is limited, however, by CR 26(b)(4), which provides in relevant part that

> [s]ubject to the provisions of subsection (b)(5) of this rule, a party may obtain discovery of documents and tangible things

---

[2]Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

otherwise discoverable under subsection (b)(1) of this rule *and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative* (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

(Italics ours.)

■ CR 26(b)(5)(B) not only limits discovery of experts who will not be called at trial, it also restricts the calling of such experts at trial. *Mothershead v. Adams*, 32 Wn. App. 325, 328, 647 P.2d 525 (citing *Crenna v. Ford Motor Co.*, 12 Wn. App. 824, 828, 532 P.2d 290 (applying CR 26(b)(4) to a party's efforts to call the opposing party's experts as witnesses at trial), *review denied*, 85 Wn.2d 1011 (1975)), *review denied*, 98 Wn.2d 1001 (1982).

The question then is whether Dr. Grow's medical evaluation of Ms. Johnson was "prepared in anticipation of litigation". If it was, the testimony would be permitted only upon Ms. McCay's showing of substantial need. If, on the other hand, the report was not prepared in "anticipation of litigation", then it is discoverable and Ms. McCay should, absent other considerations, be entitled to call Dr. Grow as an expert witness.

■ In determining whether a document was prepared in anticipation of litigation, our Supreme Court looks "to the specific parties involved and the expectations of those parties". *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 400, 706 P.2d 212 (1985). *See also Peters v. Ballard*, 58 Wn. App. 921, 930, 795 P.2d 1158 (protections of CR 26(b)(4) did not apply because the doctor's "knowledge and opinions were derived from his role as [the plaintiff's] subsequent treating physician, not in anticipation of litigation or for trial"), *review denied*, 115 Wn.2d 1032 (1990); *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 396, 743 P.2d 823 (1987) (court evaluates specific parties and their expectations in order to determine whether the materials sought were prepared in anticipation of litigation), *review denied*, 109 Wn.2d 1025 (1988).

The court in *Crenna v. Ford Motor Co., supra* at 830, concluded:

> Subdivision (b)(4)(A) is concerned with experts retained or specially consulted in relation to trial preparation. Thus, it does not limit discovery of matters acquired by a person outside of trial preparation — *e.g.,* as a witness to an accident, even though the person is an expert.

(Quoting from the federal committee's Note of 1970 to amended subdivision (b) of Fed. R. Civ. P. 26 in 4 James W. Moore, *Federal Practice* ¶ 26.01[18], at 26-51 (2d ed. 1974).)[3]

▇ Had Ms. Johnson and Allstate been the litigants here, and had Dr. Grow been retained by Ms. Johnson, her attorneys, or her insurance carrier, his medical evaluation of Ms. Johnson would clearly have been in anticipation of litigation. But this litigation is between Ms. Johnson and Ms. McCay (and Ms. McCay's insurer). Allstate, the party requiring the medical examination, was neither a party nor the representative of a party. "Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b) . . .". 8 Charles A. Wright et al., *Federal Practice* § 2024, at 354 (2d ed. 1994).

Neither Ms. Johnson nor her representatives chose to be examined by Dr. Grow. The medical examination, performed at Allstate's behest, was for the purpose of evaluating Allstate's continuing obligation to pay PIP benefits to Ms. Johnson. Dr. Grow's medical examination of Ms. Johnson was not, therefore, in anticipation of this litigation.

Federal decisions support this conclusion. In *Grinnell Corp. v. Hackett,* 70 F.R.D. 326 (D.R.I. 1976), the court, at page 332, stated:

> The very inclusion of the words "trial preparation" in the heading of subsection (b)(4) indicates that discovery of experts is to be limited only insofar as the information sought was obtained for the very purpose of preparing for the litigation in question.

In *Bunting v. Gainsville Mach. Co.,* 53 F.R.D. 594 (D. Del. 1971), the court noted that "[t]he protection accorded by Rule

---

[3]The language of our Washington CR 26 is drawn from the federal rules. 4 Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Rules Practice* 18 (4th ed. 1992).

26(b) . . . can only be asserted by a 'party' or his 'representative' . . . ." and ruled that Liberty (which had paid the compensation claim of the worker) did not fall within the literal terms of Fed. R. Civ. P. 26(b)(3) because it was not a party. *Bunting*, at 595. The interests of the insurer were, in fact, adverse to the employee. *Bunting*, at 596. The request for a protective order was therefore denied.

Here, too, the interests of Allstate and Ms. Johnson are adverse. It was in Allstate's interest only to require Ms. Johnson to submit to Dr. Grow's medical examination. Neither Ms. Johnson nor her representatives arranged or paid for the examination. *See also Dominguez v. Syntex Lab., Inc.*, 149 F.R.D. 158 (S.D. Ind. 1993) (plaintiff's visit to physician occurred in anticipation of litigation when plaintiff's attorney arranged for plaintiff to visit physician); *McFadden v. Norton Co.*, 118 F.R.D. 625 (D. Neb. 1988) (report prepared in keeping with defendant's business policy of evaluating claims in-house was not prepared in anticipation of litigation); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115 (N.D. Ga. 1972) (insurer's evaluation of routine claim from a policy-holder is not undertaken in anticipation of litigation even though litigation does result from denial of claim).

Dr. Grow's medical examination of Ms. Johnson was not performed in anticipation of the instant litigation. Testimony regarding the examination was not protected by CR 26(b) because the rule affords protection only to a party or its representative. The court therefore erred in excluding Dr. Grow's testimony.

## Harmless Error

■ We next address whether the error requires reversal and a new trial or whether it is, instead, harmless error.[4] Our Supreme Court recently ruled that:

> The exclusion of evidence which is cumulative or has speculative probative value is not reversible error. *Henry v. LeonardoTruck Lines, Inc.*, 24 Wn. App. 643, 602 P.2d 1203 (1979); *see*

---

[4]We do not address Ms. Johnson's argument that even if the evidence is not work product (and therefore admissible), it should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. The weighing and balancing required by ER 403 is a function of the trial court. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 256, 744 P.2d 605 (1987). Because the

also, e.g., *Tumelson v. Todhunter*, 105 Wn.2d 596, 603, 716 P.2d 890 (1986); *Moore v. Smith*, 89 Wn.2d 932, 941-42, 578 P.2d 26 (1978). The evidence need not be identical to that which is admitted; instead, harmless error, if error at all, results where evidence is excluded which is, in substance, the same as other evidence which is admitted. *See, e.g., Moore*, at 941-42 (no reversible error where "the substance" of the excluded evidence, an exhibit, came out at trial in testimony); *Mason v. Bon Marche Corp.*, 64 Wn.2d 177, 179, 390 P.2d 997 (1964) (no reversible error where no offer of proof and no showing that excluded evidence differed "in any material respect" from that which was admitted); *Gaffney v. Scott Pub'g Co.*, 41 Wn.2d 191, 194, 248 P.2d 390 (1952) (no reversible error where other testimony was "in substance, the same as" the excluded evidence), *cert. denied*, 345 U.S. 992 (1953).

*Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 169-70, 876 P.2d 435 (1994).

Here, Ms. McCay obtained facts and opinions on the same subject addressed in Dr. Grow's medical report through her own independent medical examiner, Dr. Max Bocek. Moreover, Ms. McCay presented the testimony of two of Ms. Johnson's own treating physicians. The testimony of both tended to support Ms. McCay's theory of damages (Ms. Johnson was not seriously injured) by diminishing the nature and extent of her injuries. Drs. Kokenge and Bornfleth examined Ms. Johnson before her second accident and concluded, essentially, she was not disabled and could return to work as a cosmetologist. Dr. Kokenge, who saw her a month after the first accident, testified as follows:

Q: Doctor, you examined her one month after the accident?

A: Approximately.

Q: Did you find she was disabled as a result of your examination?

A: I didn't take in any consideration about her disability, about that.

Q: Can you give us an opinion now as to whether or not when you saw her she was disabled in any way?

A: I felt her neurological examination was normal. Based on that, I would assume she was not disabled.

He testified that when he examined her he found none of the marked tenderness in the muscle groups of her neck, upper

---

trial court's decision was based on CR 26(b)(5)(B), there was no need to and, accordingly, the court did not engage in an ER 403 analysis. There is, therefore, no basis for the assignment of error.

back and shoulder girdle area, which had been noted by other physicians. He felt her complaints of headaches would gradually subside, with time.

Dr. Bornfleth, a neurosurgeon, also saw Ms. Johnson at the request of Dr. Williams, her primary treating physician, and was, likewise, unimpressed with her injuries. His physical examination showed her to be normal. He felt that her "problem would be self-limiting" and opined that she was not suffering from any disability. Defense counsel clearly, and appropriately, suggested to the jury the weight which should be attached to this testimony by pointing out that he had not hired either Dr. Kokenge or Dr. Bornfleth.[5] His suggestion was clear — at least some of Ms. Johnson's own physicians are not convinced she is seriously injured. Dr. Grow's testimony may well have buttressed these opinions but it would also have been cumulative. The failure to admit the testimony of Dr. Grow was therefore harmless.

The judgment of the trial court is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

THOMPSON, C.J., and SCHULTHEIS, J., concur.

---

[5]"Q:  Incidentally, you were seeing Mrs. Johnson in this case at the request of her physician and not me; is that right?

"A: Yes, right."