99 P.3d 872 (2004)
152 Wash.2d 480
Bradley R. HARRIS, individually, Respondent,
v.
Doris B. DRAKE, individually, and Dennis Drake, individually and the marital community composed thereof, Petitioners.
No. 74025-9.
Supreme Court of Washington, En Banc.
Argued May 11, 2004.
Decided October 14, 2004.
*873 Marilee C. Erickson, Reed McClure, Two Union Square, Seattle, David Hadley Middleton, Federal Way, for Petitioner.
Kari Ingrid Lester, Ben F. Barcus & Associates PLLC, Tacoma, for Respondent.
Bryan Patrick Harnetiaux, Debra Leigh Williams Stephens, Spokane, for Amicus Curiae Washington State Trial Lawyers Association Foundation.
IRELAND, J.
In this case we consider whether the report of, and opinions gained from, a medical examination conducted pursuant to the terms of personal injury protection (PIP) in an automobile insurance policy may be considered work product in the subsequent litigation with the tortfeasor. We hold that the report may be entitled to the qualified immunity of the work product doctrine.

FACTS
Doris Drake, defendant/petitioner, rearended Bradley Harris, plaintiff/respondent in April 1996. Harris injured his back and shoulder in the accident. He filed a PIP claim with his insurer, United Services Automobile Associates (USAA). Numerous physicians treated Harris over the next 20 months.
In November 1996, USAA required Harris undergo an independent medical examination (IME), according to the terms of Harris's PIP coverage. USAA retained Dr. Brandt Bede to perform the examination. Dr. Bede's report indicated that Harris had suffered an impingement syndrome of the left shoulder as a result of the automobile accident.
In September 1997, Harris's orthopedic surgeon also diagnosed him with impingement syndrome and performed arthroscopic surgery for the condition. By December 1997, Harris was recovered and pain free with full range of motion. He moved to Augusta, Georgia in February 1998.
Dr. Bede wrote a second report in February 1998, after reviewing additional medical information. In the second report, Dr. Bede concluded that Harris's impingement syndrome was not related to the automobile accident with Drake.
Harris filed suit against Drake in May 1998. During discovery, Drake obtained copies of Dr. Bede's reports though the reports were not provided by Harris or his attorney. Neither party contends that Harris knowingly and voluntarily provided Dr. Bede's reports *874 to Drake. In March 1999, Drake listed Dr. Bede as a defense expert. The original trial date was continued from June 1999 to September 1999. The parties filed and exchanged witness and exhibit lists prior to the September 1999 trial date. Drake designated Dr. Bede as a witness and listed Dr. Bede's reports as exhibits. Harris objected to Dr. Bede's reports, but the objections did not raise the issue of privilege or work product immunity.
Once more the trial was postponed before going forward on April 10, 2001. On April 9, 2001, the day before trial, Harris filed a motion in limine to exclude the testimony of Dr. Bede. Harris contended that Dr. Bede was Harris' own consulting expert, whom Harris was not intending to call at trial. Further, Harris claimed that Dr. Bede's reports were the work product of Harris' insurance company. Harris claimed he was entitled to assert qualified immunity under the work product doctrine on behalf of the insurance company because Harris was authorized by USAA to seek reimbursement of the PIP coverage from Drake.
The trial court instructed the parties to consult with USAA concerning its position regarding Drake's use of Dr. Bede's report, and Drake's intent to call Bede as a witness. Joanne Randolph, a subrogation specialist at USAA, indicated during a phone call with Harris's counsel that USAA would not take a position adverse to its insured and would not allow Dr. Bede to be called as Drake's witness. Harris's counsel advised the court of USAA's position.
The court granted Harris's motion to exclude Dr. Bede. Drake argued that exclusion of Dr. Bede left her without a medical witness. She asked for a continuance. Noting that the trial had already been continued two times and that Harris had traveled from Georgia for the trial, the court denied Drake's request for a continuance.
At trial, Drake admitted liability. At the end of the evidence, the court directed a verdict for Harris on causation and special damages, and submitted general damages to the jury. The jury awarded $120,000 in general damages, plus costs, for a total verdict of $140,965.

ANALYSIS
Civil Rule (CR) 26 sets forth the general rules of discovery in civil matters. That rule allows for discovery of anything material to the litigation and not protected by privilege. The work product doctrine provides a qualified immunity from discovery. Under the work product doctrine, documents prepared in anticipation of litigation are discoverable only upon a showing of substantial need. Heidebrink v. Moriwaki, 104 Wash.2d 392, 396, 706 P.2d 212 (1985). The doctrine is incorporated in CR 26(b)(4),[1] which provides in part:
Subject to the provision of subsection (b)(5) of this rule, a party may obtain discovery of documents and tangible things... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
Thus, CR 26(b)(4) requires that work product can be obtained only upon a showing of necessity for one's case and an inability to acquire similar material elsewhere. Pappas v. Holloway, 114 Wash.2d 198, 210, 787 P.2d 30 (1990).
As set out above, CR 26(b)(4) begins with a proviso: "Subject to the provisions of subsection (b)(5) of this rule a party may...." CR 26(b)(5) concerns discovery from experts. CR 26(b)(5) provides that when a party retains an expert, who acquires or develops facts and opinions in anticipation of litigation, and the party does not expect to call that expert at trial, another party may *875 obtain discovery only as provided in CR 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. Detwiler v. Gall, Landau & Young Constr. Co., 42 Wash.App. 567, 568-69, 712 P.2d 316 (1986). The work product doctrine limits not only pretrial discovery but may also prevent a consulting expert who is hired in anticipation of litigation from testifying at deposition or trial. See Crenna v. Ford Motor Co., 12 Wash.App. 824, 828-31, 532 P.2d 290 (1975).
To determine whether the work product privilege should apply under the facts of this case, the Court of Appeals proposed three questions: (1) Did the work product protection attach in anticipation of PIP litigation or arbitration between USAA and Harris?, (2) If the privilege attached, did it terminate before the trial of this tort litigation between Harris and Drake?, and (3) If the privilege attached and did not terminate, was it properly claimed at the trial of this tort litigation between Harris and Drake? Harris v. Drake, 116 Wash.App. 261, 272, 65 P.3d 350 (2003).

Did the work product protection attach?
In answering the first question, we refer to Heidebrink, 104 Wash.2d 392, 706 P.2d 212, the key Washington case on work product doctrine. Under Heidebrink, determination of whether material was prepared in the anticipation of litigation in a particular case, and thus qualifies as work product, requires examination of the specific parties and their expectations. Id. at 400, 706 P.2d 212.
In Heidebrink, the defendant/insured gave a recorded statement to his insurer following an automobile accident. Plaintiff brought suit for injuries and sought to obtain a copy of the defendant/insured's recorded statement. The insurance company refused to turn it over, claiming the recorded statement was prepared in anticipation of a possible lawsuit against the insured and was therefore work product. Heidebrink, 104 Wash.2d at 399, 706 P.2d 212 (citing Fireman's Fund Ins. Co. v. McAlpine, 120 R.I. 744, 391 A.2d 84 (1978) (where a Rhode Island court reasoned that the seeds of prospective litigation are sown when the insured reports a claim to the insurance company, and the prudent party begins to prepare his or her case at that time)).
Further, the Heidebrink court noted that when the insurance company takes its insured's statement of how the accident happened, the insured reasonably expects that this statement to his own insurer will be kept confidential, will be transmitted to the attorney selected to represent the insured, and will not be turned over to the opposing side. Id. at 400, 706 P.2d 212. In addition, the insured is required by the insurance contract's cooperation clause to supply a statement to the insurer. An insured risks losing coverage for the incident if he or she fails to cooperate by refusing to supply the requested statement. Tran v. State Farm Fire & Cas. Co., 136 Wash.2d 214, 224, 961 P.2d 358 (1998). This contractual obligation creates a reasonable expectation in the insured that the information obtained by the insurer will be kept confidential. Heidebrink, 104 Wash.2d at 400, 706 P.2d 212.
Just as the insured's statement in Heidebrink was obtained for the purpose of defending against a liability claim, Harris's medical examination was conducted by USAA for the purpose of defending against a claim for further PIP benefits. In addition, like the "liability insured" in Heidebrink, a "PIP insured" has a contractual obligation to submit to an IME at the PIP insurer's request. The insured must comply with the insurance contract's requirements in order to secure the promised coverage. Like the liability insured in Heidebrink, the PIP insured likely expects his insurance company to keep the IME confidential. It is just as reasonable an expectation for a PIP insured to expect medical information to be held confidential as it is for a liability insured to expect that accident information given to the liability insurer will be kept confidential. Especially medical information, which is generally regarded as confidential, should be subject to an expectation of protection from disclosure to the tortfeasor.
Drake claims that the relationship between Harris and USAA is not analogous to the *876 relationship between the insured and insurer in Heidebrink. However, no authority has been cited to treat information developed in anticipation of PIP arbitration or litigation any differently from information developed in anticipation of liability litigation for purposes of work product protection.
We recognize that the relationship between an insured and his or her insurer is sometimes adversarial, while at other times the interests of the insured and insurer are aligned. This dual relationship requires close examination, evaluating the specific positions of the insurer and insured in each instance. See, e.g., Ellwein v. Hartford Co., 142 Wash.2d 766, 781, 15 P.3d 640 (2001) (quoting Hendren v. Allstate Ins. Co., 100 N.M. 506, 672 P.2d 1137, 1141 (Ct.App.1983) (stating that the insurer may not overreach the insured, and the insured expects to be treated fairly and in good faith despite an adversarial posture)), overruled on other grounds by Smith v. Safeco Ins. Co., 150 Wash.2d 478, 78 P.3d 1274 (2003); Fisher v. Allstate Ins. Co., 136 Wash.2d 240, 249, 961 P.2d 350 (1998) (UIM is adversarial by nature and thus gives rise to an inevitable conflict between the UIM carrier and the UIM insured). Indeed, Heidebrink requires examination of the relationship of the parties in each case.
In examining the relationship between the insured and the insurer in this case, we note that Harris's and USAA's interests are aligned. USAA specifically authorized Harris to represent USAA's subrogation interests in the litigation with Drake. USAA is interested in recouping its PIP payments, and Harris is interested in seeking compensation for his injuries. In this case, the Court of Appeals' determination that the work product privilege should attach in anticipation of PIP litigation or arbitration seems better reasoned than Drake's position that confidentiality cannot be expected. Therefore, we hold that the PIP insurer's IME may properly be considered work product protection.

When does the work product protection terminate?
Next the Court of Appeals considered whether the work product protection can be claimed even after the PIP litigation or arbitration has terminated. We have previously answered that question in the affirmative. Pappas, 114 Wash.2d at 209-10, 787 P.2d 30 (the underlying purposes served by the work product doctrine can be preserved only if the protection attaches even after litigation has terminated). See also Limstrom v. Ladenburg, 136 Wash.2d 595, 963 P.2d 869 (1998); Dawson v. Daly, 120 Wash.2d 782, 845 P.2d 995 (1993).
Drake cites a Court of Appeals, Division Three case, Johnson v. McCay, for the holding that a doctor who performs a PIP medical examination is not a consulting expert and the report of the examination is not work product because it is not prepared in anticipation of litigation. 77 Wash.App. 603, 609, 893 P.2d 641 (1995). In that case, Beverly Johnson was a passenger in Marcy Turner's car when it was rear-ended by Kimberly McCay. Johnson made a claim for medical expenses against Allstate, Turner's PIP carrier. Allstate demanded Johnson undergo a medical examination pursuant to the terms of the PIP coverage. When Johnson later sued McCay for negligence, McCay sought to call the PIP physician. The trial court upheld the work product protection but Division Three disagreed, and quoted a federal decision that held that the work product protection applies "`only insofar as the information sought was obtained for the very purpose of preparing for the litigation in question.'" Johnson, 77 Wash.App. at 609, 893 P.2d 641 (emphasis added)(quoting Grinnell Corp. v. Hackett, 70 F.R.D. 326, 332 (D.R.I.1976)). Division Three held that the medical evidence would be subject to the work product protection only if prepared for the instant litigation between Johnson and McCay. Johnson, 77 Wash.App. at 609, 893 P.2d 641. Division Three held that it was error to exclude the medical evidence, though the error was harmless under the facts of that case. Id. at 610, 893 P.2d 641.
The Johnson court relied on a fragment from Wright's Federal Practice and Procedure to conclude that "`[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b) ...'." Johnson, 77 Wash.App. at 609, *877 893 P.2d 641 (quoting 8 Charles A. Wright, Arthur R. Miller Richard L. Marcus, Federal Practice and Procedure 2024, at 354 (2d ed.1994)). However, as Division Two noted, the commentary from Wright concludes that it would be intolerable to interpret CR 26(b)(4) as providing protection only to the parties in the particular case for which the documents were created.
"Fortunately the courts need not be confined to a literal reading of [CR 26(b)(4)] and can continue to arrive at sensible decisions on this narrow point. To the extent that rule [26(b)(4)], literally read, seems to give insufficient protection to material prepared in connection with some other litigation, the court can vindicate the purposes of the work-product rule by the issuance of a protective order under Rule 26(c)."
Harris, 116 Wash.App. at 283, 65 P.3d 350 (quoting 8 Wright, Miller Marcus. supra, at 354-56).
In this case, Division Two followed the analysis of Pappas, Daly, and Limstrom, and properly rejected the analysis in Johnson. Id. at 277, 65 P.3d 350. We hold that the work product protection in this case did not terminate upon resolution of the PIP dispute between Harris and USAA.

Was the work product protection properly asserted?
This leads us to the third question posed by the Court of Appeals, which is whether work product protection was appropriately asserted in this case. In general, both a party and the party's representative may assert the protection of the work product rule. A party's representatives may include those retained or employed by the party's insurer. Heidebrink, 104 Wash.2d at 400-01, 706 P.2d 212; see also Lewis H. Orland, Observations on the Work Product Rule, 29 Gonz. L.Rev. 281, 289-90 (1993-94). In addition, as set out above, the protection extends beyond the litigation in which the protected materials were developed.
For example, in Dever v. Fowler, 63 Wash. App. 35, 816 P.2d 1237, 824 P.2d 1237 (1991), the protection was successfully claimed by a party not present in the original litigation. In Dever, the prosecutor charged defendant Dever with arson. The prosecutor prepared various documents in anticipation of trial but dismissed the case before trial. Dever then sued the investigating fire marshal (and the city that employed him) for malicious prosecution. When Dever attempted to discover the prosecutor's documents, the prosecutor claimed work product protection, even though he was not a party to the civil case. Division One stated:
The language found in [CR 26(b)(4)] does not limit work product protection to parties to the instant litigation. We conclude, "based on the underlying purposes served by the work-product doctrine," that protection under the work product doctrine extends to documents prepared in anticipation of any litigation, regardless of whether the party from whom it is requested is a party in the present litigation.
Dever, 63 Wash.App. at 47, 816 P.2d 1237. Division One concluded that the work product rule protected from discovery the documents prepared by the prosecuting attorneys. Id.
Here, the trial court directed the parties to contact USAA and determine its position. The parties talked with a subrogation specialist at USAA who indicated that USAA would not allow Dr. Bede to testify against its insured. USAA had a subrogation interest in Harris's suit against Drake, and USAA sought to protect that interest. In addition, the USAA representative stated that USAA would not take a position contrary to its insured. Taking a position opposed to its insured might be interpreted as a violation of USAA's quasi-fiduciary duty to Harris. Ellwein, 142 Wash.2d 766, 15 P.3d 640. There is no assertion by either party that the subrogation specialist was not authorized to act on behalf of USAA. Therefore, we hold that USAA properly claimed the protection of the work product doctrine under the facts of this case. We recognize that it is the better practice to assert a claim of work product as soon as is practicable, and it should be asserted far enough before trial for the opposing party to acquire alternate materials and witnesses. However, under the facts of this case, we cannot say that it was an abuse of discretion for the trial court to exclude Dr. *878 Bede as a witness on the basis of work product protections.

Continuance
Drake argues that the trial court's denial of a continuance under the circumstances was an abuse of discretion. The decision to grant a continuance is up to the discretion of the trial court and its decision will be upheld absent an abuse of discretion. In re Det. of G.V., 124 Wash.2d 288, 295, 877 P.2d 680 (1994). A trial court abuses its discretion if its decision is manifestly unreasonable, exercised on untenable grounds, or is arbitrary. Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 683, 15 P.3d 115 (2000).
Drake argues that the exclusion of Dr. Bede left her without a medical witness and that the trial court should therefore have granted a continuance. Harris, on the other hand, argues that Drake should have known that Johnson v. McCay could not be relied upon and that Drake had nearly three years to obtain her own independent medical exam of Harris. While it is true that Drake had three years to seek an IME, so too did Harris have three years to claim the work product protections he sought the day before trial. However, the trial had already been continued multiple times and Harris had made cross-country trips more than once to attend the trial. At some point a trial must proceed. Therefore, we cannot say that under the circumstances of this case it was an abuse of discretion for the trial court to deny Drake's motion for a continuance.

Directed Verdict on Causation
Drake argues that the trial court erred in granting a directed verdict on the issue of causation. A trial court should grant a motion for directed verdict if, as a matter of law, no competent evidence or reasonable inferences exist to sustain a verdict for the nonmoving party. Moe v. Wise, 97 Wash. App. 950, 956, 989 P.2d 1148 (1999) (citing Bender v. City of Seattle, 99 Wash.2d 582, 587, 664 P.2d 492 (1983)). Drake argues that there was evidence at trial that made causation reasonably debatable. An MRI (magnetic resonance imaging) performed one month after the accident showed Harris's shoulder was normal; Harris's shoulder problem appeared later, after he resumed his painting job. Also, Harris's surgeon testified that painters often have impingement syndrome problems caused by their profession. However, there was no evidence of a shoulder problem prior to trial.
Even allowing for the possibility of a preexisting condition, the defense failed to show that such condition was symptomatic prior to the accident. When an accident lights up and makes active a preexisting condition that was dormant and asymptomatic immediately prior to the accident, the preexisting condition is not a proximate cause of the resulting damages. Bennett v. Messick, 76 Wash.2d 474, 478-79, 457 P.2d 609 (1969).
We affirm the Court of Appeals.
MADSEN, JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, and FAIRFURST, JJ., concur.
ALEXANDER, C.J. (dissenting).
I disagree with the majority opinion for two independent reasons. First, the majority erroneously sanctions the assertion of the work product privilege by an insurer, United Services Automobile Associates (USAA), after it voluntarily released the documents at issue to its adversary-insured, Bradley Harris, who then provided the documents to the defendant-petitioner, Doris Drake. Second, the majority incorrectly concludes that it was not error for the trial court to deny Drake's motion for a continuance when the trial court excluded Drake's only expert witness on the morning of trial. I would hold that USAA waived any work product privilege it may have had and that the trial court abused its discretion in not granting a continuance. I, therefore, dissent.

I. WORK PRODUCT PRIVILEGE
The work product doctrine only protects documents that are prepared in anticipation of litigation. Heidebrink v. Moriwaki, 104 Wash.2d 392, 396, 706 P.2d 212 (1985). However, the privilege continues even after the *879 litigation for which it was produced has ceased. Pappas v. Holloway, 114 Wash.2d 198, 210, 787 P.2d 30 (1990). The purpose behind the creation of this privilege was "to preclude unwarranted excursions into the privacy of a mans work." Hickman v. Taylor, 329 U.S. 495, 497, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (emphasis added). Thus, the privilege is limited to information that remains undisclosed. In re Firestorm 1991, 129 Wash.2d 130, 141-42, 916 P.2d 411 (1996).
It is widely accepted that if a party voluntarily discloses documents to an opposing party, then any possible work product protection for those documents is waived. EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 613 (4th ed. 2001) ("Although not all disclosures of work-product protected materials necessarily result in a waiver as to other parties, disclosure to an adversary does result in a waiver. Because the protection is designed to protect an attorneys trial preparation and mental processes from discovery at the behest of an adversary, clearly voluntary disclosure to an adversary would almost invariably be seen as a total waiver."); see also Limstrom v. Ladenburg, 110 Wash.App. 133, 145, 39 P.3d 351 (2002) (concluding that "[i]f a party discloses documents to other persons with the intention that an adversary can see the documents, waiver generally results").
More problematic is the situation where documents are inadvertently disclosed. Indeed, there are no Washington cases discussing the inadvertent disclosure of work product protected materials. In the absence of state precedent, we look to the federal courts interpretation of similar rules of civil procedure. Am. Disc. Corp. v. Saratoga W., Inc., 81 Wash.2d 34, 37, 499 P.2d 869 (1972).
The majority of the federal courts apply a flexible test to determine whether the work product privilege is waived when documents are inadvertently disclosed. United States v. Gangi, 1 F.Supp.2d 256, 264 (S.D.N.Y.1998).
Under this flexible test, courts are called on to balance four relevant factors: (1) the reasonableness of the precautions taken by the producing party to prevent inadvertent disclosure of privileged documents; (2) the volume of discovery versus the extent of the specific disclosure at issue; (3) the length of time taken by the producing party to rectify the disclosure; and (4) the overarching issue of fairness.
United States v. Rigas, 281 F.Supp.2d 733, 738 (S.D.N.Y.2003). The Third Circuit Court of Appeals has noted that "in the case of inadvertent or involuntary disclosures, the party asserting the work product doctrine must pursue all reasonable means to restore the confidentiality of the materials and to prevent further disclosures within a reasonable period to continue to receive the protection of the privilege." In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998).
The majority here concludes that the reports are work product because "Harris's medical examination was conducted by USAA for the purpose of defending against a claim for further PIP [personal injury protection] benefits." Majority at 875. Therefore, it holds that the litigation for which the work product was created was that relating to the PIP insurance benefits in which the opposing parties were USAA and Harris.[1] I do not take issue with this conclusion. Where the majority errs is in ignoring the fact that USAA then voluntarily provided its adversary, *880 Harris, a copy of the medical examination. Respts Answer to Pet. for Review at 8. Drake was subsequently furnished, arguably inadvertently, a copy of the examination from Harris treating physician. Id.
In my view, the furnishing of the examination to Drake by USAA was inadvertent and, therefore, we should consider the factors set forth in Rigas to determine if USAA waived any possible work product privilege. Applying these factors, it is apparent that USAA took no precautions to assure that Drake or others would not receive the examination; indeed, USAA turned it over to its adversary, Harris. Moreover, USAA failed to take any action to rectify the disclosure until over two years after it occurred and even then the court had to inquire as to USAAs position. Majority at 874. Lastly, fairness weighs heavily toward waiver, considering Drake gave notice of her intent to use the examinations, and USAA failed to act until the day of trial. Based on these factors, I conclude that USAA waived any work product privilege as to Drake.

II. CONTINUANCE
The trial court has the discretion to deny a motion for a continuance, and the exercise of this discretion will be reversed only if abused. In re Det. of G.V., 124 Wash.2d 288, 295, 877 P.2d 680 (1994).
In exercising its discretion, the court may properly consider the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court.
Balandzich v. Demeroto, 10 Wash.App. 718, 720, 519 P.2d 994 (1974).
Here, the trial court refused to grant the continuance after Harris attorney explained that trial had been continued twice before and that the plaintiff traveled from Georgia to Tacoma to attend the trial. The Court of Appeals affirmed the trial courts decision in that regard, emphasizing that the trial had been "continued" eight times. Harris v. Drake, 116 Wash.App. 261, 288, 65 P.3d 350 (2003), review granted, 150 Wash.2d 1025, 82 P.3d 242 (2004). The majority of this court affirms the trial court and Court of Appeals based on its reasoning that "[a]t some point a trial must proceed." Majority at 878.
Applying the factors listed in Balandzich, the first relevant consideration is the prior continuances granted to the moving party. Here, there was only one prior continuance granted at the insistence of Drakes attorney. The record shows that on November 27, 2000, Drakes attorney moved to continue the trial that had been scheduled for March 20, 2001, because the attorney was previously scheduled to begin another trial in Pierce County on that date. The attorney made this motion approximately one month after the March 20, 2001, trial date had been set and approximately four months before the trial date. Because the attorney made the motion promptly and because he had no choice but to make this motion in light of the conflicting settings, the fact that he requested this continuance should not support the trial courts refusal to grant the continuance at issue.
The other continuance noted by the trial court was stipulated to by both parties and, therefore, does not support the trial courts decision to deny the motion for continuance that Drake made on the day of trial. Lastly, the other six changes in the trial date that the Court of Appeals found significant should not be considered because these appear to have been made to accommodate the trial courts calendars and not those of the parties to the case. Indeed, the local rules of the Superior Court for Pierce County (PCLR) authorize the presiding judge to adjust the trial date to "accommodate the Courts civil and criminal calendars and to attempt to insure trial on the day scheduled." PCLR 40(g)(2)(A).
The only other factor that was brought to the trial courts attention was that the plaintiff had traveled from Georgia for the trial on April 10, 2001. Although this fact might weigh in favor of denial of the continuance *881 motion, it is greatly outweighed by the plaintiffs delayed objection to Drakes witness. We have observed that the "trial by ambush style of advocacy [ ] has little place in our present-day adversarial system." Lybbert v. Grant County, 141 Wash.2d 29, 40, 1 P.3d 1124 (2000). Here, Harris waited until the last moment, 4:00 p.m. on the day before trial, to object to the defenses expert and seek his exclusion.[2] This eleventh-hour action strikes me as entirely unreasonable in light of the fact that Harris had known for over two years that Drake intended to call the witness, Dr. Bede.
In sum, I dissent because any work product privilege that may have been attached to the medical examination was waived and because it was unreasonable under the circumstances for the trial court to deny a continuance to Drake when Harris waited until the last moment to assert his objection to Drakes expert witness.
NOTES
[1] CR 26(b)(4) and CR 26(b)(5) were renumbered in 1990 from the former CR 26(b)(3) and CR 26(b)(4). The federal rules have been similarly renumbered. For ease of reading we will refer to the current numbers.
[1] Although the majority concludes that the medical examination was conducted in anticipation of a dispute between USAA and Harris, in the same paragraph it states that it is reasonable for the PIP insured to expect that the insurer will keep the medical exam confidential. These two determinations are inconsistent. If the examination was prepared in anticipation of a possible suit against Harris, why should Harris have a reasonable expectation that the report will be kept confidential? Instead, Harris should expect that the exam will be used against him if there is a future legal dispute concerning the PIP benefits. The majority's confusion stems from a misunderstanding of Heidebrink v. Moriwaki, 104 Wash.2d 392, 706 P.2d 212. There, the defendant/insured gave a statement to his insurance investigator immediately after an automobile accident, and we determined that this statement was work product protected because the insurance investigator was acting for the insured's benefit at the time of the statement. Heidebrink, 104 Wash.2d at 394, 400, 706 P.2d 212. Here, however, the insurance company was in an adversarial position to its insured at the time of the exam. Specifically, USAA anticipated that it might be in a future suit with Harris.
[2] The Court of Appeals also faulted Drake for relying on Johnson v. McCay, 77 Wash.App. 603, 893 P.2d 641 (1995). Harris, 116 Wash.App. at 287, 65 P.3d 350. This argument is also unpersuasive because Drake never had reason to rely on Johnson considering Drake listed Dr. Bede as his expert and Harris did not object for over two years. Dr. Bede as his expert and Harris did not object for over two years. Dr. Bede as his expert and Harris did not object for over two years.