[No. 50082–7.   En Banc.   September 20, 1984.]

SEVENTH ELECT CHURCH IN ISRAEL, *Respondent,* v. GERALD L. ROGERS, ET AL, *Appellants.*

*Betts, Patterson & Mines, P.S.,* by *Jeffrey C. Grant* and *James P. Solimano,* for appellants.

*Freese & Freese, Inc., P.S.,* by *Ralph I. Freese,* and *Murphy & Elgot,* by *Richard J. Moore,* for respondent.

PEARSON, J.—In January 1981, the Seventh Elect Church in Israel (Church) recovered a judgment of approximately $2,500,000 against Gerald L. Rogers and the marital community composed of Gerald L. Rogers and Priscilla A. Rogers.[1] Rogers was the Church's business manager from 1967 to 1976. The 1981 judgment was predicated on a breach of Rogers' fiduciary duty to the Church.

The Church initiated supplemental proceedings pursuant to RCW 6.32 seeking to satisfy the judgment. There have

[1]For historical background on the Seventh Elect Church in Israel, *see Seventh Elect Church v. First Seattle Dexter Horton Nat'l Bank,* 167 Wash. 473, 10 P.2d 207 (1932); *Seventh Elect Church v. First Seattle Dexter Horton Nat'l Bank,* 162 Wash. 437, 299 P. 359 (1931).

been three other appeals involving Gerald, Priscilla, and their daughter, Gina Rogers, dealing with their refusal to answer questions in supplemental proceedings, claiming the marital privilege and the privilege against self–incrimination. *See Seventh Elect Church v. Rogers,* 34 Wn. App. 91, 660 P.2d 290 (1983); *Seventh Elect Church v. Rogers,* 34 Wn. App. 96, 660 P.2d 294 (1983); *Seventh Elect Church v. Rogers,* 34 Wn. App. 105, 660 P.2d 280 (1983). There have been numerous adjudications of assets fraudulently transferred by Rogers since supplemental proceedings were initiated. Additionally, there are numerous federal and state actions currently pending against Rogers outside this state.

As provided in RCW 6.32.030, third parties may be brought into supplemental proceedings to answer questions regarding, among other things, their knowledge of the property interests of the judgment debtor. Pursuant to this section, Betts, Patterson & Mines, P.S. (Betts, Patterson) and William P. Fite (a member of Betts, Patterson), attorneys for Gerald Rogers, were requested to answer the following questions pertaining to the amount, source and manner of payment of legal fees paid to them by Rogers:

1. Please produce for inspection and copying all records maintained by Betts, Patterson & Mines reflecting legal fees received by that firm from or on behalf of Gerald L. Rogers or Priscilla A. Rogers.

. . .

3. State the date that each payment was received by Betts, Patterson & Mines from or on behalf of Gerald L. Rogers.

4. Set forth the amount of each payment received by Betts, Patterson & Mines from or on behalf of Gerald L. Rogers.

5. Identify and provide the address of each person or entity remitting payments to Betts, Patterson & Mines on behalf of Gerald L. Rogers.

6. State the form of each payment received by Betts, Patterson & Mines from or on behalf of Gerald L. Rogers (i.e., cash, check, wire transfer, etc.).

7. As to each payment received by Betts, Patterson & Mines from or on behalf of Gerald L. Rogers, identify the

bank, branch and account name upon which each payment was drawn.

8. Produce copies of all documents retained by Betts, Patterson & Mines reflecting payments received by that firm from or on behalf of Gerald L. Rogers. If copies of all payments are not available, identify the bank and branch into which Betts, Patterson & Mines deposited same.

Betts, Patterson refused to answer these questions citing the attorney–client privilege. On June 10, 1983, Judge Norman W. Quinn required Betts, Patterson to answer the questions. As part of this order, Judge Quinn required Betts, Patterson to seek immediate appellate review of the applicability of the attorney–client privilege to these questions.

While this appeal was pending, Betts, Patterson was subpoenaed to appear and testify at a related proceeding. At this hearing, the following questions were posed to Mr. Fite:

1. State the total amount of legal fees and costs paid to you and/or the firm of Betts, Patterson & Mines, P.S. by any person or entity on behalf of Gerald L. Rogers, Priscilla A. Rogers or Gina F. Rogers;

2. State the total amount of legal fees and costs billed by you and/or the firm of Betts, Patterson & Mines to any person or entity for services rendered on behalf of Gerald L. Rogers, Priscilla A. Rogers or Gina F. Rogers;

3. Identify each person or entity which has made payments to you and/or the firm of Betts, Patterson & Mines for legal fees or costs incurred on behalf of Gerald L. Rogers, Priscilla A. Rogers or Gina F. Rogers;

4. For each payment made to you and/or the firm of Betts, Patterson & Mines on behalf of Gerald L. Rogers, Priscilla A. Rogers or Gina F. Rogers, disclose the person or entity making the payment, the amount of the payment, the date of the payment, and the client on whose behalf the payment was made;

5. For each payment made to you and/or the firm of Betts, Patterson & Mines, P.S. on behalf of Gerald L. Rogers, Priscilla A. Rogers, or Gina F. Rogers give a breakdown as to the payments made on behalf of each.

These questions were not answered and were objected to

on the grounds that they violated the attorney–client privilege, and that Rogers had expressly directed Betts, Patterson not to answer such questions. On July 18, 1983, Judge Robert E. Dixon approved an order directing Betts, Patterson to answer the questions. Judge Dixon also ruled that Betts, Patterson and Mr. Fite would be held in contempt if they did not answer the questions by July 21, 1983. Betts, Patterson subsequently sought review of the order and a motion for stay was granted. The two appeals are consolidated for review.

Two issues require our consideration: (1) is information concerning the amount, source and manner of payment of legal fees protected by the attorney–client privilege; and (2) may an attorney be found in contempt for refusing to disclose information arguably within the scope of the attorney–client privilege prior to appellate resolution of the issue? In addressing the issue whether information regarding fees is protected by the attorney–client privilege, we first discuss the scope of the statutory privilege and then the scope of the attorney's ethical duty found in the Code of Professional Responsibility.

The statutory attorney–client privilege in Washington is codified under RCW 5.60.060(2), which provides:

> An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

As a general rule, "the identity of an attorney's clients and the nature of his fee arrangements with his clients are not confidential communications protected by the attorney–client privilege." *United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir. 1977).

> Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating.

*In re Osterhoudt,* 722 F.2d 591, 593 (9th Cir. 1983). *See*

also *In re Witnesses Before Special March 1980 Grand Jury,* 729 F.2d 489 (7th Cir. 1984). The consultations for which the fees were charged are protected by the privilege, and they will remain privileged despite a requirement that the amount, source and manner of payment of the fee be disclosed.

There is, however, an important exception to this general rule which bars disclosure "where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *Hodge & Zweig,* at 1353. Appellants contend the exception applies in this case.

Betts, Patterson does not represent Rogers in any criminal actions; therefore, it does not appear that disclosure of fee information would implicate Rogers in "the very criminal activity for which legal advice was sought." Nevertheless, Betts, Patterson argues that the requisites of the privilege are met whenever evidence regarding the fees paid would implicate the client in any pending criminal matters. They argue that much of their legal advice rendered in this civil case was in light of potential criminal exposure to Rogers resulting from positions taken, testimony given, and arguments made here. They also contend that had Rogers chosen Betts, Patterson to represent him in all of the pending criminal cases, in addition to this civil case, the requisites of the "legal advice" exception to the general rule would be met.

The modern formulation of the "legal advice" exception is found in *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960). Appellants' argument that their case fits within the exception seems to be based on a misreading of *Baird.*

In *Baird* the client had engaged the lawyer for advice in tax matters and, on the attorney's recommendation, had anonymously paid delinquent taxes through the attorney. The government sought disclosure of the client's name from the attorney. In its holding that the attorney–client privilege protected the client's name from disclosure, the court

quoted with approval the following passage:

> "The name of the client will be considered privileged matter where the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney was employed * * *"

*Baird,* at 633 (quoting 97 C.J.S. *Witnesses* § 283e (1957)).

In *Baird,* the identity of the client was part of the privileged communication between the attorney and client. The principle of *Baird* was not that the privilege applied because the identity of the client was incriminating, but because in the circumstances of the case disclosure of the identity of the client was in substance a disclosure of the confidential communication.

Although in the present case the disclosure of the source, manner of payment and amount of attorney fees may prove incriminating to Rogers, it will not convey the substance of the confidential communications between Rogers and his attorneys. Therefore, disclosure of information regarding legal fees in this case is not barred by the statutory attorney–client privilege.

We next address the applicability of the confidentiality provisions in the Code of Professional Responsibility to the facts of this case. Canon 4 of the code provides in relevant part:

> (A) "Confidence" refers to information protected by the attorney–client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
> (B) Except when permitted under sections (C) and (D), a lawyer shall not knowingly during or after termination of the professional relationship to his client:
> (1) Reveal a confidence or secret of his client.
> (2) Use a confidence or secret of his client to the disadvantage of the client.
> (3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the cli-

ent consents after full disclosure.

(C) A lawyer may reveal:

(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

(2) Confidences or secrets when permitted under disciplinary rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

CPR DR 4–101.

The rule of confidentiality found in Canon 4 of the code is considerably broader than the statutory attorney–client privilege discussed above. The provisions in the code cover both "confidences", which is coextensive with the statutory privilege, and "secrets", which "refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." CPR DR 4–101(A). Since we have held that the information sought by the Church in this case is not protected by the statutory privilege, then neither is it a protected "confidence" under the code. However, since the information sought here concerning the amount, source and manner of payment of legal fees constitutes "information gained in the professional relationship", and Rogers has requested Betts, Patterson not to disclose the information, it is a "secret" within the provisions of the code.

The only applicable exception to the rule against the disclosure of secrets is contained in subsection (C)(2) of CPR DR 4–101, which provides that a lawyer may reveal a secret "when . . . required by law or court order." Since the two trial courts involved in this appeal have ordered disclosure of the information sought by the Church, Betts, Patterson will not violate the disciplinary rule by divulging the information.

We must next determine whether either trial court abused its discretion in ordering Betts, Patterson to disclose its client's "secret". In ordering disclosure of "secrets", the trial court must balance the necessity of the disclosure

against the effect such disclosure might have on the attorney–client relationship. In making this determination, it is important to keep in mind the purpose of the rule of confidentiality as set forth in Ethical Consideration 4–1 of the Code of Professional Responsibility:

> Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.

CPR EC 4–1.

The Church in this case has a legitimate interest in the information sought regarding the amount, source and manner of payment of Rogers' legal fees. The Church has had great difficulty in collecting its judgment, at least in part due to numerous fraudulent transfers of Rogers' assets. Information regarding the persons or entities paying Rogers' legal fees may give the Church additional sources from which to satisfy its judgment.

At the other end of the scale is the potential effect such disclosure might have on the attorney–client relationship in general, and specifically in this case. We find it difficult to see how disclosure will adversely affect the attorney–client relationship in general, or specifically in the present case. We are concerned that disclosure may make the attorney a potential witness against the client in subsequent criminal proceedings. This, we fear, would be destructive of any

continuing relationship between the attorney and client. However, most situations where disclosure would subject the client to criminal liability are already protected by the statutory attorney–client privilege. As we indicated in our prior discussion of the statutory privilege, information regarding attorney fees is protected when it would in effect reveal a confidential professional communication. *See United States v. Hodge & Zweig,* 548 F.2d 1347 (9th Cir. 1977); *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960).

It is our view that disclosure in this case will not have a significant adverse effect on open and free–flowing communications which are so important in the attorney–client relationship. Furthermore, we disapprove of any attempt by a client to use the rule of confidentiality in such a way as to involve his attorney in the concealment of his assets so as to defraud judgment creditors. Balancing the effects of disclosure on the attorney–client relationship with the legitimate interest of the Church in collecting its judgment, we hold the trial courts in this case did not abuse their discretion in ordering disclosure of information regarding the amount, source and manner of payment of legal fees.

Finally, we address the trial court's finding of contempt against Betts, Patterson. We faced a similar issue in *Dike v. Dike,* 75 Wn.2d 1, 448 P.2d 490 (1968). In *Dike,* an attorney in a child custody proceeding refused to disclose the location of a client who had taken custody of her child in violation of a court order. The attorney claimed his client's address was a privileged communication. The trial court rejected the claim of privilege and found the attorney in contempt. We rejected the attorney's claim of privilege, but also vacated the finding of contempt. We do the same in this case.

When an attorney makes a claim of privilege in good faith, the proper course is for the trial court to stay all sanctions for contempt pending appellate review of the issue. Accordingly, we vacate the finding of contempt against Betts, Patterson contingent on their answering the

Church's questions regarding Rogers' legal fees within 30 days of issuance of the mandate in this case.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied November 13, 1984.