[No. 20536-6-I. Division One. September 19, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH A. SHEPPARD, *Appellant.*

*Kenneth A. Sheppard,* pro se, and *Simburg, Ketter, Haley, Sheppard & Purdy,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marilyn B. Brenneman, Deputy,* for respondent.

Winsor, J.—Kenneth A. Sheppard, an attorney, appeals an order finding him in contempt of court and committing him to jail because of his refusal to answer questions posed by the State during a proceeding before a special inquiry judge. Sheppard contends that the trial court erred in ordering him to answer questions regarding the source of

payments for his representation of two former clients and to produce documents pursuant to a subpoena duces tecum pertaining to fee arrangements for one of those clients. Sheppard also assigns error to the trial court's refusal to allow him to consult with one of his clients to determine whether he wished to waive the attorney–client privilege and allow Sheppard to answer the court's questions.

Sheppard had represented Richard Myers and Roger Hondel in early 1987. He had also represented Brian Hodgson. During the special inquiry proceeding, convened pursuant to RCW 10.27.010, the State asked Sheppard the following question:

With regard to the fee arrangements that you had for your representation of Mr. Myers, who did you work those out with?

Sheppard refused to answer the question on the basis of the attorney–client privilege and RPC 1.6. The court ordered Sheppard to answer the question. Sheppard again refused to answer, citing *Seventh Elect Church v. Rogers,* 102 Wn.2d 527, 688 P.2d 506 (1984), and his understanding that his duty to his client required him to refuse to answer the question, and to ask the court to enter an order and stay any contempt sanctions pending appellate review of the court's order. The court again ordered Sheppard to answer the question with the understanding that if he failed to answer, he would be held in contempt of court and placed in custody until he answered. Sheppard again refused to answer the question.

Sheppard then asked the court whether he could disclose to his former client the questions that were being asked of him to determine whether the former client wished to waive the attorney–client privilege. The court refused to allow Sheppard to disclose the questions because Sheppard was under an oath of secrecy that forbade him from revealing any of the questions asked of him during the special inquiry proceeding. The State then asked Sheppard the following questions:

Did Mr. Hodgson ever discuss your representation of Mr. Myers with you?

Did Brian Hodgson pay you to represent Mr. Myers?

Did Brian Hodgson pay you to represent Roger Hondel?

If Mr. Hodgson did not pay you to represent these people, who did?

Have you been paid for your representation of these individuals?

The State had also served Sheppard with a subpoena duces tecum ordering him to bring records regarding Myers' fee arrangements to the special inquiry proceeding. Sheppard refused to answer the questions and to produce the records on the grounds that he was precluded from doing so by the attorney–client privilege and RPC 1.6. The trial court held Sheppard in contempt of court and ordered that he be taken into custody, but stayed the confinement pending appeal. On the record, the trial court told Sheppard that he should make available to this court the fee records which he refused to produce so that it could make a ruling as to whether the records should be disclosed, and, if they should be disclosed, in what form. Sheppard appealed the order of contempt, and, in addition, at oral argument presented us with a sealed envelope containing his billing records for Myers.

ATTORNEY–CLIENT PRIVILEGE

■ The attorney–client privilege in Washington is codified at RCW 5.60.060(2), and states:

An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.[1]

---

[1]RCW 5.60.060 was amended twice during the 1987 Legislature. Neither act amending the statute made reference to the other act. Under such circumstances, each act shall be given effect to the extent that the amendments do not conflict in purpose, otherwise the act last filed in the office of the secretary of state in point of time shall control. RCW 1.12.025. The only difference between the two versions

The party asserting the attorney–client privilege has the burden of demonstrating both the existence of an attorney–client relationship and how the information sought fits within the privilege. *In re Grand Jury Subpoenas,* 803 F.2d 493, 496, 84 A.L.R. Fed. 833 (1986), *modified,* 817 F.2d 64 (9th Cir. 1987). As a general rule, the identity of an attorney's clients and the nature of fee arrangements with clients are not confidential communications protected by the attorney–client privilege. *Seventh Elect Church,* 102 Wn.2d at 531. The substance of the consultations for which the fees were charged is protected by the privilege, and will remain privileged despite a requirement that the amount, source and manner of payment of the fee be disclosed. *Seventh Elect Church,* 102 Wn.2d at 532.

There is an important exception to the general rule which bars disclosure "'where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought.'" *Seventh Elect Church,* 102 Wn.2d at 532 (quoting *United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir. 1977)). This rule, as set forth in *Hodge & Zweig* and quoted in *Seventh Elect Church,* is based on *Baird v. Koerner,* 279 F.2d 623, 95 A.L.R.2d 303 (9th Cir. 1960). In *Baird,* several clients had directed their attorney to tender anonymously to the IRS delinquent tax payments. The IRS issued a summons requiring the attorney to identify his clients. The Court of Appeals concluded that disclosure of the clients' identity was protected by the attorney–client privilege because identification of the clients would, in effect, convey the substance of a privileged communication in which the clients had disclosed their tax liabilities. *Baird,* 279 F.2d at 630. The Court of Appeals later cited *Baird* for the above proposition that a client's identity and fee arrangements may be privileged where the person invoking the privilege

of the attorney–client privilege is that the one cited above uses gender–neutral language. We use that version in recognition of the heterogeneity of the bar.

can show that a strong probability exists that disclosure of the information would implicate the client in the very criminal activity for which legal advice was sought. *Hodge & Zweig,* 548 F.2d at 1353.

Our Supreme Court has recognized that the "legal advice" or *Baird* exception is limited. The principle that *Baird* represents is that in the circumstances of that particular case, disclosure of the identity of the client was in substance a disclosure of the confidential communication. *Seventh Elect Church,* 102 Wn.2d at 533. In *Seventh Elect Church,* the attorneys for judgment debtor Rogers cited the attorney–client privilege in refusing to answer questions in supplemental proceedings regarding the amount, source, and manner of payment of legal fees paid to them by Rogers. The Supreme Court concluded that although the disclosure of this information might prove incriminating to defendant Rogers, it was not privileged because it would not convey the substance of communications between Rogers and his attorneys.[2]

Sheppard's reason for declining to disclose information regarding the fee arrangements was his fear that that disclosure could establish a tie between his clients and other objects of investigation. However, that possibility does not bring the information within the "legal advice" exception to the rule that information regarding fees is not protected from disclosure by the attorney–client privilege. There is no evidence or argument that the existence of a fee arrangement between Sheppard's clients and a third party would convey the substance of a confidential communication

---

[2]In *Tornay v. United States,* 840 F.2d 1424, 1427 (9th Cir. 1988), the Court of Appeals concluded that the quote from *Hodge & Zweig* upon which Sheppard relies is dictum and has no precedential value. Like our Supreme Court, the Ninth Circuit Court of Appeals views the "legal advice" exception to the rule that fee information is not privileged to be very narrow. The Court of Appeals regards the "legal advice" exception enunciated in *Baird* to be applicable "only when it is shown that, because of exceptional circumstances, disclosure of the client's identity or the existence of a fee arrangement would reveal information that is tantamount to a confidential professional communication." (Footnote omitted.) *Tornay,* 840 F.2d at 1428.

between Sheppard and his clients. Therefore, the trial court properly determined that the information regarding the fee arrangements between Sheppard and his clients was not protected from disclosure by the attorney–client privilege.

In addition, at the trial court's command, Sheppard has presented us with his billing records for Richard Myers so that we can determine whether and in what form the records can be provided to the State in response to its subpoena duces tecum. We have already held that Sheppard may provide information as to the fee arrangements because as a rule, that information is not privileged, and under these circumstances, it does not fall within the exception to that rule. We decline the invitation to review the records and make a determination as to the form for their production, as that determination is initially for the trial court.

## RPC 1.6

Sheppard contends that had he answered the questions he was asked, and had he produced the records requested in the subpoena duces tecum, he would have violated his ethical duty to protect the confidences and secrets of his clients. RPC 1.6 states, in part:

> **(a)** A lawyer shall not reveal confidences or secrets relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in section (b).
>
> **(b)** A lawyer may reveal such confidences or secrets to the extent the lawyer reasonably believes necessary . . .

The scope of the rule of confidentiality contemplated in the ethical rule is considerably broader than the statutory attorney–client privilege because the ethical rule encompasses both "confidences" and "secrets."[3] *Seventh Elect*

---

[3]The court in *Seventh Elect Church v. Rogers, supra,* addressed this issue under CPR DR 4–101, the former ethical rule governing the confidentiality of attorney–client communications. However, CPR DR 4–101 is consistent with RPC 1.6 and does not affect our analysis. *See In re York,* 44 Wn. App. 547, 553 n.5, 723 P.2d 448 (1986). The definitions of "confidence" and "secret" are identical under

*Church,* 102 Wn.2d at 534. The two terms are defined as follows:

> "Confidence" refers to information protected by the attorney–client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

"Terminology" section of Rules of Professional Conduct. The provision of the Rules of Professional Conduct protecting "confidences" of clients is coextensive with the statutory privilege. *Seventh Elect Church,* 102 Wn.2d at 534. Since we have determined that the information sought by the State is not protected by the statutory attorney–client privilege, neither is it a confidence within the meaning of RPC 1.6.

In addition, Sheppard has not shown that the information sought by the State was a secret. It was information gained in the professional relationship. *See Seventh Elect Church,* 102 Wn.2d at 534. However, there is no showing that the clients requested that the information be held inviolate or that the disclosure of the information would be embarrassing or would be likely to be detrimental to the clients. The only situation that we can envision that would make the information likely to be detrimental to the clients would be if the information would subject them to criminal liability. *See Seventh Elect Church,* 102 Wn.2d at 536. However, in most situations in which disclosure of fee information would subject the client to criminal liability, the information is already protected by the attorney–client privilege because such information is protected when it would in effect reveal a confidential professional communication. Therefore, we conclude that the information sought is neither a confidence nor a secret, and Sheppard may disclose it without violating RPC 1.6.

---

the two rules. *Compare* "Terminology" preface to Rules of Professional Conduct *with* CPR DR 4–101(A).

TRIAL COURT'S REFUSAL TO ALLOW SHEPPARD
TO CONSULT HIS CLIENT

Sheppard contends that the trial court abused its discretion under RCW 10.27.090(3) to allow him to consult one of his clients to determine whether he wished to waive the attorney–client privilege and to allow Sheppard to reveal the information as to the source and payment of his legal fees. The State responds that there is no clear showing of abuse of discretion that would justify reversing the trial court on this issue.

█ RCW 10.27.090(3) provides:

No grand juror, public or private attorney, city attorney or corporation counsel, reporter, interpreter or public servant who held a witness in custody before a grand jury or special inquiry judge, or witness, principal or other person shall disclose the testimony of a witness examined before the grand jury or special inquiry judge or other evidence received by it, except when required by the court to disclose the testimony of the witness examined before the grand jury or special inquiry judge for the purpose of ascertaining whether it is consistent with that of the witness given before the court, or to disclose his testimony given before the grand jury or special inquiry judge by any person upon a charge against such person for perjury in giving his testimony or upon trial therefor, *or when permitted by the court in furtherance of justice.*

(Italics ours.) Sheppard is apparently relying on the language which permits disclosure of proceedings before a special inquiry judge "when permitted by the court in furtherance of justice." As we have already determined that disclosure of the information sought by the State would violate neither the attorney–client privilege nor RPC 1.6, we conclude that the trial court did not abuse its discretion in refusing to allow Sheppard to consult his client.

CONTEMPT CITATION

Although we conclude that Sheppard should answer the questions put to him by the State, and should, in some form to be determined by the trial court, disclose Myers' fee records, we also conclude that Sheppard's refusal to

answer the questions was done in good faith. Accordingly, we will adhere to the procedure followed by the court in *Seventh Elect Church v. Rogers, supra,* and *Dike v. Dike,* 75 Wn.2d 1, 448 P.2d 490 (1968), when an attorney asserts the attorney–client privilege in refusing to answer a question, is ordered by the court to do so, and is held in contempt for disobedience of the order. The trial court properly initiated this procedure by staying all sanctions for contempt pending appellate review. *See Seventh Elect Church,* 102 Wn.2d at 536. We vacate the order finding Sheppard in contempt, contingent on Sheppard's answering the State's questions regarding the source of payment for his former clients' legal fees within 30 days of issuance of the mandate in this case. In addition, we remand this case to the trial court for hearing to determine the form in which Myers' fee records shall be released to the State.

SWANSON and WEBSTER, JJ., concur.