# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75722-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EARL RONALD ROGERS, JR. | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | No. 75828-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| EARL RONALD ROGERS, JR., | ) | |
| | ) | FILED: February 20, 2018 |
| Appellant. | ) | |
| | ) | |

VERELLEN, C.J. — These appeals concern the State's attempt to compel attorney David Trieweiler to produce a letter written by his former client, Earl Rogers, to the victim of his alleged felony telephone harassment.

In No. 75828-4-I, Trieweiler appeals the trial court's order finding him in contempt for failing to produce the letter. He argues the court's subpoena duces tecum is invalid because it exceeds the scope of criminal discovery and seeks privileged or protected information. In No. 75722-9-I, Rogers challenges the

court's denial of the motion to quash the subpoena on the same grounds. Because the two cases involve the same legal issues and facts, we issue a single opinion.

The subpoena was not challenged before the trial court on the basis that it exceeded the scope of criminal discovery. We decline to reach this unpreserved claim of error.

Trieweiler was not the recipient of the letter. He obtained the letter from a third party. Even assuming the client mentioned the letter to his attorney, the attorney-client privilege does not extend to objects obtained from third parties. The letter is not protected by attorney-client privilege.

RPC 1.6 does not preclude Trieweiler from producing the letter to comply with a court order. Because the State has a legitimate interest in the letter and disclosure has little impact on the attorney-client relationship, the trial court did not abuse its discretion when it ordered Trieweiler to disclose the letter.

Therefore, we affirm.

## FACTS

Rogers was charged with felony telephone harassment for threatening to kill Manesbia Pierce, his girlfriend's mother. He was represented by Trieweiler.

While the case was pending, the State became aware of a letter Rogers had written and mailed to Pierce's daughter, Timothea Marshall. Marshall gave the original letter to Pierce. Pierce gave a copy of the letter to Trieweiler. Pierce told the prosecutor Rogers apologized in the letter and offered to pay her to drop

2

the charges. It is undisputed that neither Marshall nor Pierce possess the original or a full copy of the handwritten letter.

In March 2016, the court removed Trieweiler as Rogers' attorney. In June 2016, the trial court issued a subpoena duces tecum for Trieweiler to produce documents, including the letter. On Trieweiler's motion to quash, the court narrowed the scope of the subpoena but still required Trieweiler to produce the letter. When he failed to produce it, the court found him in contempt.

Trieweiler appeals the contempt order. Rogers appeals the denial of the motion to quash.

## ANALYSIS

Rogers argues the trial court abused its discretion when it denied the motion to quash the subpoena. Trieweiler contends the trial court abused its discretion when it found him in contempt for failing to produce the subpoenaed letter.

We review contempt findings and discovery orders for abuse of discretion.[1]

### I. Scope of Discovery

For the first time on appeal, Trieweiler and Rogers contend the subpoena exceeded the scope of criminal discovery because CrR 4.7 does not allow the State to subpoena materials from any third party. We generally do not consider

---

[1] In re Interest of M.B., 101 Wn. App. 425, 454, 3 P.3d 780 (2000); State v. Yates, 111 Wn.2d 793, 797, 765 P.2d 291 (1988); State v. Boehme, 71 Wn.2d 621, 633, 430 P.2d 527 (1967) (quoting State v. Mesaros, 62 Wn.2d 579, 587, 384 P.2d 372 (1963)).

issues raised for the first time on appeal.[2] This rule encourages "'the efficient use of judicial resources' . . . by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals."[3]

Trieweiler concedes the error was not preserved and, in a conclusory footnote, requests review under RAP 2.5(a). Given the lack of objection below and the limited argument before us, we decline to review this unpreserved claim.[4]

## II. Attorney-Client Privilege

Trieweiler and Rogers contend the letter is protected by attorney-client privilege.

The attorney-client privilege is codified in RCW 5.60.060(2)(a), which provides "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." Information protected by the attorney-client privilege includes objects acquired by an attorney through a direct and confidential communication with the client, along with literal communications.[5] But the statutory privilege is not absolute and an

---

[2] RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).

[3] State v. Robinson, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (quoting State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)).

[4] We note there is authority supporting the ability of the State or defendants to subpoena items from third parties. See, e.g., State v. White, 126 Wn. App. 131, 134-35, 107 P.3d 753 (2005) (addressing the notice required to be given by the State when subpoenaing evidence from a third party); CrR 4.8(b)(2) (addressing notice required of "a party" who seeks to subpoena a third party.)

[5] State ex rel. Sowers v. Olwell, 64 Wn.2d 828, 831, 394 P.2d 681 (1964).

object obtained from a third party with whom there was no attorney-client relationship is not privileged.[6]

In State ex rel. Sowers v. Olwell, an attorney refused to comply with a subpoena duces tecum requiring him to produce any knives relating to his client.[7] Our Supreme Court assumed the attorney must have obtained the knife as a direct result of information given to the attorney by his client.[8] For this reason, the court concluded the attorney-client privilege was implicated and the subpoena was defective on its face.[9]

But the Supreme Court expressly recognized "[i]f the knife were obtained from a third person with whom there was no attorney-client relationship, the communication would not be privileged, and the third person could be questioned concerning the transaction."[10] Additionally, the court acknowledged that even if a piece of evidence was protected by the attorney-client privilege, "the attorney, after a reasonable period, should, as an officer of the court, on his own motion turn the same over to the prosecution."[11]

---

[6] Id. at 832.

[7] 64 Wn.2d 828, 829, 394 P.2d 681 (1964)).

[8] Id. at 831-32 ("Although there is no evidence relating thereto, we think it reasonable to infer from the record that appellant did, in fact, obtain the evidence as the result of information received from his client during their conference. Therefore, for the purposes of this opinion and the questions to be answered, we assume that the evidence in appellant's possession was obtained through a confidential communication from his client.").

[9] Id. at 833.

[10] Id. at 832.

[11] Id. at 834.

Here, Trieweiler did not obtain the letter as a result of direct or confidential communication with Rogers. Rogers originally sent the letter to Marshall. Marshall gave the letter to Pierce, who then gave a copy to Trieweiler. Even if Rogers had some discussion with Trieweiler about the existence of the letter, Trieweiler still obtained the letter from third parties. And unlike Olwell, the subpoena in this case is limited to production of the letter. The State has not sought and assured this court it will not seek testimony from Trieweiler regarding the letter. It would be an odd standard if a defendant could shield a material item from discovery merely by communicating its existence to his or her attorney.[12] The letter is not subject to the attorney-client privilege.

### III. RPC 1.6

Trieweiler and Rogers also argue RPC 1.6 precludes Trieweiler from disclosing the letter.

RPC 1.6(a) provides "[a] lawyer shall not reveal information relating to the representation of a client unless . . . the disclosure is permitted by paragraph (b)." The information protected by the rule includes confidences and secrets. "'Confidence' refers to information protected by the attorney client privilege under applicable law, and 'secret' refers to other information gained in the professional

---

[12] In Matter of Det. of Williams, 147 Wn.2d 476, 494, 55 P.3d 597 (2002) (a client "cannot create a privilege simply by giving [crime related] records to his attorney.").

relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client."[13]

"Confidences," for purposes of RPC 1.6, is coextensive with the statutory attorney-client privilege.[14] But because the rule also extends to "secrets," the rule "is considerably broader than the statutory attorney-client privilege."[15]

As previously discussed, the letter is not within the attorney-client privilege and therefore is not a confidence. And even if the letter is a secret, the duty of nondisclosure is not absolute. RPC 1.6(a) expressly provides that its limits on disclosure do not apply if "the disclosure is permitted by paragraph (b)." Pursuant to RPC 1.6(b)(6), a lawyer "may reveal information relating to the representation of a client to comply with a court order." Since the court ordered disclosure of the letter, Trieweiler will not violate the RPCs by divulging the information.[16]

That leaves the question of whether the trial court abused its discretion in ordering Trieweiler to disclose the letter.[17] "In ordering disclosure of 'secrets', the trial court must balance the necessity of the disclosure against the effect such

---

[13] RPC 1.6 cmt. 21.

[14] Seventh Elect Church in Israel v. Rogers, 102 Wn.2d 527, 534, 688 P.2d 506 (1984).

[15] Id.; Dietz v. Doe, 131 Wn.2d 835, 842 n.3, 935 P.2d 611 (1997).

[16] See Seventh Elect Church, 102 Wn.2d at 534 ("Since the two trial courts involved in this appeal have ordered disclosure of the information sought by the Church, Betts, Patterson will not violate the disciplinary rule by divulging the information").

[17] See id. ("We must next determine whether either trial court abused its discretion in ordering Betts, Patterson to disclose its client's 'secret.'").

disclosure might have on the attorney-client relationship."[18] The purpose of the duty of confidentiality is to preclude disclosure of secrets when disclosure would have a "significant adverse effect on open and free-flowing communications which are so important to the attorney-client relationship."[19]

Here, the State has a legitimate interest in the letter because it is not disputed that the letter contains evidence of the crime charged (the apology for admitted acts), along with evidence of other criminal activity (offer to bribe the victim). Any suggestion that the severity of the crime impacts the legitimacy of the State's interest is not compelling. The State has as legitimate an interest in prosecuting harassment as it does for murder.

The impact of disclosure on the attorney-client relationship depends on all the circumstances. Here, the impact is minimal because the order is limited to the letter itself, and the State assures us that it will not seek any testimony from Trieweiler, including how he gained possession of the letter.[20] Any suggestion that production of the letter alone chills open and free-flowing communication with an attorney is not persuasive. Although compelling an attorney to disclose evidence of a client's criminal conduct may generally implicate protected confidences or

---

[18] Id. at 534-35.

[19] Id. at 536.

[20] See Olwell, 64 Wn.2d at 834 ("By thus allowing the prosecution to recover such evidence, the public interest is served, and by refusing the prosecution an opportunity to disclose the source of the evidence, the client's privilege is preserved and a balance is reached between these conflicting interests.").

secrets, a client does not establish an adverse impact on the attorney-client relationship solely because the item obtained may have detrimental consequences in current or future criminal proceedings. Neither Rogers nor Trieweiler establish any meaningful harm to their attorney-client relationship. The trial court did not abuse its discretion in ordering Trieweiler to disclose the letter.

Therefore, we affirm the trial court's order compelling the production of the letter and denying the motion to quash the subpoena. Because Trieweiler asserted a claim of privilege in good faith, we vacate the contempt finding contingent on Trieweiler providing the letter within 30 days of issuance of the mandate in No. 75828-4-I.[21]

WE CONCUR:

_____

Trickey, J.

_____

Appelwick

---

[21] See Seventh Elect Church, 102 Wn.2d at 536-37 ("When an attorney makes a claim of privilege in good faith, the proper course is for the trial court to stay all sanctions for contempt pending appellate review of the issue. Accordingly, we vacate the finding of contempt against Betts, Patterson contingent on their [compliance with the court order] within 30 days of issuance of the mandate in this case.").

2018 FEB 20 8:59 FILED COURT OF APPEALS DIV I STATE OF WASHINGTON