FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 NOV -5 AM 9: 29

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| SAFE ACQUISITION, LLC, a Washington corporation, LUCIDY, LLC, a Washington corporation, and SCOTT FONTAINE, an individual, | ) ) ) ) ) | No. 77309-7-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| GF PROTECTION INC., d/b/a Guardian Fall Protection, a Washington corporation, | ) ) ) ) | UNPUBLISHED OPINION<br><br>FILED: November 5, 2018 |
| Respondent. | ) ) ) | |

VERELLEN, J. — A party asserting an attorney-client privilege bears the burden of proving the existence of an attorney-client relationship. The absence of findings of fact that an attorney-client relationship existed is deemed an adverse finding to the party asserting the privilege. Here, the trial court concluded that appellant SAFE Acquisition, LLC did not meet its burden of establishing the attorney-client privilege applied to e-mails between its litigation counsel and the two individuals who acted on behalf of both SAFE and respondent GF Protection Inc. (GFP). In the absence of any findings that an attorney-client relationship existed between the litigation counsel for SAFE and two individuals, there is no reversible error.

A party asserting the work product rule bears the burden of establishing the documents or items in question were prepared in anticipation of litigation. SAFE failed to offer anything more than the conclusory statement that all communications between litigation counsel and the two individuals were "for the purpose of advising and representing" SAFE.[1] But the substance of the disputed e-mails is unknown. And it is conceivable that some portion of the e-mails might reveal litigation strategy or other information that constitutes an attorney's work product. Accordingly, we remand to the trial court to conduct in camera review or otherwise resolve whether any or all of the disputed e-mails are protected work product.

## FACTS

Scott Fontaine founded SAFE to develop and market his patented safety inventions, including a safety device for roofers called the HitchClip. Starting in 2009, Fontaine asked his friend Mike Vasquez for help promoting the HitchClip. In August 2013, SAFE contracted with GFP to manufacture, sell, and distribute its patented inventions in exchange for a share of the proceeds. In March or April of 2014, Brock Bullard, another friend of Fontaine's, began working with SAFE. The venture between SAFE and GFP did not go well, however, and by April 10, 2015, SAFE's then-counsel threatened to sue GFP. Soon after, SAFE retained its present counsel and filed suit against GFP for breach of contract, misappropriation of trade secrets, and conversion.

---

[1] Clerk's Papers (CP) at 120.

On August 23, 2016, GFP served SAFE with requests for production of all communications with Mike Vasquez and Brock Bullard "from December 2011 to present . . . including but not limited to, COMMUNICATIONS regarding the present lawsuit."[2] SAFE refused the requests as to communications with litigation counsel because they "ask[ed] for attorney-client communications and/or work product."[3]

Almost one year later, GFP filed a motion to compel. The court granted the motion and denied SAFE's motion for reconsideration. On September 15, 2017, the court granted GFP's motion for monetary sanctions after SAFE continued to resist production of the disputed materials.

On September 19, 2017, a commissioner of this court granted a temporary stay of the trial court's order levying sanctions pending a ruling on SAFE's motion for discretionary review. On October 25, 2017, the commissioner denied review and lifted the stay. A panel of this court granted SAFE's motion to modify the commissioner's ruling denying interlocutory appeal and ordered the temporary stay on sanctions continue pending appeal.

## ANALYSIS

We review discovery orders for an abuse of discretion.[4]

---

[2] CP at 18.

[3] Id.

[4] Cedell v. Farmers Ins. Co. of Wash., 176 Wn.2d 686, 694, 295 P.3d 239 (2013); see Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 355, 858 P.2d 1054 (1993) (holding that courts are "given wide latitude" in managing sanctions for discovery violations).

Civil Rule (CR) 26 governs discovery. The scope of discovery is broad.[5]
But privileged matters are generally not subject to discovery.[6]

## Attorney-Client Privilege

Attorney-client privilege is "'narrow'" and "'protects only communications
and advice between attorney and client.'"[7] When a corporation or limited liability
company is a client, the general rule is that the privilege may extend beyond the
"control group" of upper management to include some non-managerial employees
and other agents.[8]

Whether an attorney-client relationship exists is a question of fact.[9] The
party invoking the privilege bears the burden of establishing an entitlement to it.[10]

Here, the court considered both parties' detailed arguments regarding
attorney-client privilege and concluded that SAFE failed to carry its burden in
invoking the privilege. The court did not enter any findings of fact resolving the
conflicting facts regarding Bullard and Vasquez's relationships with SAFE and
GFP.

---

[5] Cedell, 176 Wn.2d at 695; see CR 26(b)(1) ("Parties may obtain discovery regarding any matter.").

[6] CR 26(b)(1).

[7] Newman v. Highland Sch. Dist. No. 203, 186 Wn.2d 769, 777, 381 P.3d 1188 (2016) (quoting Hangartner v. City of Seattle, 151 Wn.2d 439, 452, 90 P.3d 26 (2004)) (internal quotation marks omitted).

[8] Id. at 781 n.3 (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73 cmt. e); Youngs v. PeaceHealth, 179 Wn.2d 645, 650-51, 316 P.3d 1035 (2014).

[9] Dietz v. Doe, 131 Wn.2d 835, 844, 935 P.2d 611 (1997).

[10] Newman, 186 Wn.2d at 777; Dietz, 131 Wn.2d at 844.

4

SAFE relies on Fontaine's two identical "letters of intent"[11] to Bullard and Vasquez from July 21, 2014, to argue that Fontaine's friends are co-owners of SAFE. The 2014 letters vaguely discuss an ownership percentage in Fontaine's various companies:

> Thank you for the investment of your time this year with SAFE Acquisition, LLC. This letter will confirm the verbal agreement you and I made in early June. That agreement was in regards to ownership percentage.
>
> In order to address the ownership percentage amount we agreed upon was 10 [percent] of SAFE Acquisitions LLC, 10 [percent] of Lucidy LLC, 10 [percent] of Roofing Technologies LLC, and both patents associated with [the] LLC's.[12]

Neither letter states when either friend took, or will take, his 10 percent stake in Fontaine's companies.[13]

Deposition testimony from Fontaine, Bullard, and Vasquez confuses rather than clarifies. Vasquez testified he never was an owner, employee, or independent contractor for SAFE. But he understood his ownership interest in SAFE to be a future interest contingent on the company becoming profitable. Similarly, Bullard testified his agreement with SAFE involved "what ownership I *would* have in SAFE."[14] Fontaine testified that Lucidy, LLC, has no owners or investors other than himself.

---

[11] CP at 316.

[12] CP at 152.

[13] In addition, SAFE does not contend, and nothing in the record reflects, that SAFE satisfied the statutory requirements in RCW 25.15.116(2) for admitting new members to a limited liability corporation.

[14] CP at 367 (emphasis added).

SAFE offers alternative theories of agency and independent contractor relationships. But it appears Vasquez and Bullard were working as paid consultants or independent contractors for GFP while arguably prospective co-owners, ostensible co-owners, or agents of SAFE. Vasquez testified that GFP paid him $5,000 per month as a product consultant beginning October 1, 2013 to train and support the sales staff. Fontaine, however, described Vasquez's role in SAFE, beginning around July or August of 2013, as a "product consultant and sales rep[resentative]."[15] SAFE never paid royalties or a salary to Vasquez. Bullard received over $1,000 in reimbursements from GFP in December 2014. And despite Fontaine's description of Bullard as SAFE's general manager, SAFE never paid royalties or a salary to Bullard.

The court concluded that SAFE "failed to carry [its] burden in justifying their assertion that documents to which [Bullard and Vasquez] are party may be withheld on a claim of attorney-client privilege."[16] The court did not make any findings about Vasquez or Bullard's legal relationships with SAFE.

The general rule is "absence of a finding of fact on an issue is 'presumptively a negative finding against the person with the burden of proof.'"[17] An exception to the negative finding rule applies where "there is ample

---

[15] CP at 93.

[16] CP at 107.

[17] Morgan v. Briney, 200 Wn. App. 380, 390-91, 403 P.3d 86 (2017) (quoting Taplett v. Khela, 60 Wn. App. 751, 759, 807 P.2d 885 (1991)), review denied, 190 Wn.2d 1023 (2018).

evidence to support the missing finding, and the findings entered by the court, viewed as a whole, demonstrate that the absence of the specific finding was not intentional."[18]

In this case, it is appropriate to infer a negative finding against SAFE regarding attorney-client privilege. The record contains conflicting and confused evidence whether Vasquez and Bullard are co-owners, prospective co-owners, or agents of SAFE. In addition, the order's silence does not seem an inadvertent oversight to enter findings in support of an attorney-client relationship because the court expressly concluded that SAFE failed to carry its burden.

SAFE contends that the absence of findings of fact and the presence of documentary evidence means we should engage in de novo review of whether there was an attorney-client relationship. But the cases relied upon by SAFE apply only where there is undisputed evidence or the material evidence is all contained in documents in the record.[19] Because the evidence about Bullard and

---

[18] Douglas Nw., Inc. v. Bill O'Brien & Sons Constr., Inc., 64 Wn. App. 661, 682, 828 P.2d 565 (1992).

[19] For example, SAFE relies on In re Firestorm 1991, 129 Wn.2d 130, 135, 916 P.2d 411 (1996), to contend that de novo review is appropriate when the only evidence consists of written documents and the trial court makes no specific factual findings. But in Firestorm and the supporting cases cited by SAFE, appellate de novo review of a fact question depends on the evidence actually being before the reviewing court. Morgan v. City of Federal Way, 166 Wn.2d 747, 755-57, 213 P.3d 596 (2009) (report sought in a Public Records Act request was in the court record with related documents); Firestorm, 129 Wn.2d at 153-54 (contents of witness interview at issue on appeal were known to the court) (Madsen, J. concurring); Bryant v. Joseph Tree, Inc, 119 Wn.2d 210, 222, 829 P.2d 1099 (1992) (legally dispositive documents were all in the court record).

Vasquez is disputed, includes deposition testimony, and the e-mails' contents are unknown, de novo review is not warranted or practical.

Because SAFE failed to satisfy its burden of establishing the existence of an attorney-client relationship that extends to Vasquez and Bullard, the trial court did not abuse its discretion.

## Work Product

The court also concluded that the work product rule did not prevent discovery of Vasquez and Bullard's communications with SAFE's litigation counsel. Civil Rule 26(b)(4) excludes from discovery materials "prepared in anticipation of litigation or for trial."[20] Strong public policy also favors shielding genuine work product from discovery.[21] In Heidebrink v. Moriwaki, our Supreme Court defined the scope and purpose of the rule, concluding "[it] should provide protection when such protection comports with the underlying rationale of the rule to allow broad discovery, while maintaining certain restraints on bad faith, irrelevant and privileged inquiries in order to ensure just and fair resolutions of disputes."[22]

---

[20] Harris v. Drake, 152 Wn.2d 480, 486, 99 P.3d 872 (2004).

[21] Upjohn Co. v. United States, 449 U.S. 383, 398, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); see Soter v. Cowles Pub. Co., 162 Wn.2d 716, 741, 174 P.3d 60 (2007) ("Only in rare circumstances, for example, when the attorney's mental impressions are directly at issue, can an attorney or legal team member's notes reflecting oral communications be revealed.")

[22] 104 Wn.2d 392, 400, 706 P.2d 212 (1985). Heidebrink refers to CR 26(b)(3) when discussing work product because the rule was renumbered in 1990. Harris, 152 Wn.2d at 486 n.1.

Whether material should be shielded as work product by CR 26(b)(4) is a two-step mixed question of law and fact.[23] First, the court must consider whether the party opposing discovery established that the materials were prepared in anticipation of litigation and qualify as work product.[24] A court must "'examin[e] the specific parties and their expectations'" when determining whether one party prepared materials in anticipation of litigation.[25]

Second, if the party opposing discovery meets its burden of production, then the party seeking discovery bears the burden of persuading the court that it "has substantial need of the materials" and cannot obtain them without "undue hardship."[26]

The instant case presents unusual circumstances because the court had little evidence before it when examining the parties' expectations. Nothing before the court described the general or specific contents of the disputed e-mails or even the number of e-mails at issue. SAFE's only offering was a conclusory declaration from its litigation counsel stating, "All of my communications with [Vasquez and

[23] Soter v. Cowles Publ'g Co., 131 Wn. App. 882, 891, 130 P.3d 840 (2006), aff'd, 162 Wn.2d 716 (2007); see Harris, 152 Wn.2d at 492 (applying abuse of discretion standard in affirming trial court's exclusion of evidence on the basis of work product protections).

[24] See CR 26(b)(4) (only materials "prepared in anticipation of litigation" are shielded by the rule).

[25] Kittitas County v. Allphin, 190 Wn.2d 691, 704, 416 P.3d 1232 (2018) (quoting Harris, 152 Wn.2d at 487).

[26] CR 26(b)(4).

Bullard] relating to the subject matter of this case have been for the purpose of advising and representing" SAFE.[27]

A court must have more than mere recitations of the definition of work product or other "work product terms and catchphrases" when determining whether materials were prepared in anticipation of litigation.[28] The party invoking the work product rule bears the burden of production and must provide more than a conclusory statement that the materials relate to litigation.[29] As in Kittitas County v. Allphin,[30] Leahy v. State Farm,[31] and In re Detention of West,[32] the usual course

---

[27] CP at 120.

[28] Estate of Dempsey ex rel. Smith v. Spokane Wash. Hosp. Co. LLC, 1 Wn. App. 2d 628, 639, 406 P.3d 1162 (2017) ("An attorney's use of attorney work product terms and catchphrases in a letter to a testifying expert does not shield the letter from disclosure."), review denied, 190 Wn.2d 1012 (2018).

[29] See, e.g., Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983) ("It is axiomatic that in order to invoke the protection of the work product privilege, one must show that the materials sought to be protected were prepared 'in anticipation of litigation.'") (quoting Fed. R. Civ. P. 26(b)(3)); United States v. 22.80 Acres of Land, 107 F.R.D. 20, 22 (N.D. Cal. 1985) (finding that the work product rule did not apply to a statement by litigation counsel that was unsupported by "any citation of data, case law, or other authority" and "remains a bald, unsupported assertion"). We note that CR 26(b)(4) is "nearly identical" to Fed. R. Civ. P. 26(b)(3) and that analyses of the federal rule provide persuasive guidance about the comparable state rule. Soter, 162 Wn.2d at 739. Binks and 22.80 Acres of Land are helpful because they predate the 1993 amendment adding Fed. R. Civ. P. 26(b)(5)(A)(ii) to require that the party invoking any privilege "describe the nature of the documents" to "enable other parties to assess the claim," a provision not contained in the Washington rule. See Amendments to Federal Rules of Civil Procedure, Rule 26(b)(5) & comm. note, 146 F.R.D. 401, 617, 639-40 (1993).

[30] 190 Wn.2d at 699 (materials provided for in camera review).

[31] 3 Wn. App. 2d 613, 622, 418 P.3d 175 (2018) (defendant insurer raised work product rule and provided redacted materials and a privilege log of the materials sought).

would have had the party invoking the rule provide enough information to let the court evaluate the claim.

One means of providing adequate information is a privilege log.[33]

In camera review is also an appropriate option when a party invokes a privilege and the court does not know the nature or contents of the withheld documents. In Limstrom v. Ladenburg,[34] our Supreme Court considered whether the work product rule applied to the Public Records Act, chapter 42.17 RCW (PRA). After determining the work product rule could shield materials requested pursuant to the PRA, the court remanded for further consideration of the record request.[35] "[B]ecause the documents requested were not viewed by the trial court, and are not included in the record," the court was "unable to completely resolve the matter before" it.[36] The total lack of relevant documents in the record prevented the court from determining whether any documents were protected from

---

[32] 171 Wn.2d 383, 393-96, 405-06, 256 P.3d 302 (2011) (affirming finding of work product when the court had several examples of materials sought).

[33] SAFE and GFP have argued extensively about whether the court's order compelling production required that SAFE provide a privilege log for all communications, including those at issue here. But GFP's motion to compel was imited to "a complete privilege log that includes all communications with counsel withheld on the basis of privilege *up until April 10, 2015.*" CP at 28 (emphasis added). Although the eventual order, which was drafted by GFP's attorneys, recited that SAFE produce a privilege log "for all documents withheld in this case," CP at 108, it seems doubtful that the trial court intended to grant relief not requested by GFP. SAFE complied with the order by providing a privilege log of all withheld documents predating April 10, 2015.

[34] 136 Wn.2d 595, 963 P.2d 869 (1998).

[35] Id. at 612-13.

[36] Id. at 612.

disclosure in any way.[37] The court concluded that remand was appropriate because it was "conceivable" that materials sought could "show litigation strategy . . . that constitutes an attorney's work product."[38]

Consistent with our Supreme Court's holding in Limstrom, we conclude the best course is remand for the trial court to exercise its discretion in considering whether to conduct in camera review or another reasonable alternative.

Sanctions

Finally, SAFE contends it should not be subject to any sanctions accrued during the pendency of this appeal. The court found that SAFE "willfully refused to comply"[39] with past orders and imposed a fine of $200 per day payable to GFP, starting September 15, 2017, for each day SAFE did not comply. The court also awarded GFP fees and expenses for bringing the motion to compel.

Commissioner Kanazawa stayed the sanctions order on September 19, 2017, and later lifted that stay when she denied discretionary review on October 25, 2017. Commissioner Neel stayed the sanctions order again on December 27, 2017, and a panel of this court later continued that stay. Because 66 days elapsed while the trial court's sanctions order was not stayed, SAFE faces over $13,000 in sanctions payable to GFP and an undetermined amount for fees and expenses from litigating the motion to compel.

---

[37] Id. at 615.

[38] Id.

[39] CP at 254.

Trial courts have "wide latitude" in imposing sanctions for discovery violations.[40] Accordingly, court orders sanctioning discovery violations are reviewed for abuse of discretion.[41] But, sanctions accrued during a good faith appeal of attorney-client privilege and work product issues should be vacated.[42]

We conclude that any sanctions accruing during this good faith appeal should be vacated.

GFP suggests that the issue is not properly before us on appeal because SAFE did not include the court's sanction order in its notice for discretionary review.

RAP 2.4(b) allows review of an order not designated in the notice for discretionary review when two requirements are met: "(1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is

---

[40] Fisons, 122 Wn.2d at 355.

[41] Amy v. Kmart of Wash. LLC, 153 Wn. App. 846, 855, 223 P.3d 1247 (2009) (citing id. at 338).

[42] State v. Rogers, 3 Wn. App. 2d 1, 10, 414 P.3d 1143 (2018) (citing Seventh Elect Church in Israel v. Rogers, 102 Wn.2d 527, 536-37, 688 P.2d 506 (1984) ("When an attorney makes a claim of privilege in good faith, the proper course is for the trial court to stay all sanctions for contempt pending appellate review of the issue.")), review denied, 190 Wn.2d 1032 (2018); see Dike v. Dike, 75 Wn.2d 1, 16, 448 P.2d 490 (1968) ("'An attorney is entitled to consideration of a claimed privilege not to disclose information which he honestly regards as confidential and should not stand in danger of imprisonment for asserting what he respectfully considers to be lawful rights.'" (quoting Appeal of the United States Sec. & Exch. Comm'n, 226 F.2d 501, 520 (6th Cir. 1955))); Seattle Nw. Sec. Corp. v. SDG Holding Co., Inc., 61 Wn. App. 725, 734, 812 P.2d 488 (1991) ("because of the importance of protecting attorney-client privilege and the difficulty in determining when it applies, . . . a contempt judgment and its related sanctions could be overturned" if the privilege were later ruled inapplicable).

entered . . . before the appellate court accepts review."

Because the order imposing daily sanctions would not have occurred but for the court's earlier order compelling discovery, the imposition of sanctions prejudicially affects the order compelling discovery.[43] And because the order imposing sanctions was entered after SAFE filed its notice of discretionary review, both requirements of RAP 2.4(b) are satisfied. This appeal properly extends to the sanctions incurred pending appeal.

Accordingly, we affirm the trial court's determination that SAFE did not meet its burden of proving the existence of an attorney-client relationship. As to the claim of work product, we remand for further proceedings consistent with this opinion. Sanctions pending appeal should be vacated.

WE CONCUR:

---

[43] Cox v. Kroger Co., 2 Wn. App. 2d 395, 407, 409 P.3d 1191 (2018) ("Our Supreme Court has interpreted the term 'prejudicially affects' to turn on whether the order designated in the notice of appeal would have occurred absent the other order.").